CHARLES L. THAYER & another *vs.* DANIEL A. DWIGHT & others.

A pledgee with power to sell the goods and apply the proceeds on the debt does not forfeit his lien by employing the pledgor as agent to make the sale, allowing him to contract for it in his own name, and delivering the goods on his order to the purchaser.

CONTRACT by the assignees of the bankrupt estate of Jenkins, Brother & Chipman, for a balance of the price of cotton sold to the defendants. At the trial in the superior court, before *Rockwell*, J., the facts appeared as follows:

Before December 7, 1868, the firm of Jenkins, Brother & Chipman pledged to Charles Hulbert, in several lots, 155 bales of cotton as collateral security for money which he lent to them to the amount of more than $17,088.14. All these contracts of pledge were expressed in writings of the same purport with the following, which was the contract in reference to 100 of the 155 bales:

"Boston, December 2, 1868. Mr. Charles Hulbert: Sir, for value received, you are hereby authorized and empowered to hold the following described merchandise, now on storage in the Union Wharf Warehouses, to wit, One Hundred Bales of

Cotton | Marks, various | as security for the payment of the following described promissory note, by whomsoever held, to wit, | Promisor, Jenkins, Brother & Chipman, | Order of Ourselves, | Date, Dec. 1, 1868, | Time, 2 months, | Amount, $10,000, | and in trust, and with full power to sell the said merchandise, or any part thereof, without notice, at public auction or private sale, altogether or in parcels, and at such time or times as you may see fit, on or after the nonpayment at maturity of the said note, and to receive the proceeds of such sales and apply the same, 1st, to the payment of the expenses of the sales; 2d, to the payment of charges on the merchandise for storage or otherwise; 3d, to the payment of the said note to the holder or holders thereof, with interest; 4th, to pay over the surplus, if any, to ourselves or our order.

"Jenkins, Brother & Chipman."

Hulbert was a warehouseman, and had often received from Jenkins, Brother & Chipman cotton in pledge, and occasionally delivered to them, on orders similar to those hereinafter mentioned, lots of the pledged cotton to enable them to fill orders for the purchase of cotton, permitting them to substitute other cotton instead, sometimes after a short interval; and he received and kept in his warehouse these 155 bales, until he delivered them to the defendants in the following manner.

On said December 7 Jenkins called on Hulbert and said that he (Jenkins) could sell the 155 bales to the defendants for cash; that the firm had no other cotton to substitute; and that Hulbert might bill them to the defendants, or the firm would do so and bring to Hulbert the proceeds of the sale. Hulbert replied that the firm might bill them in its own name, as a matter of courtesy, on condition that Jenkins would collect the price and pay it over towards extinguishment of the debt for which the cotton was pledged; to all which Jenkins assented. Later in the same day Jenkins, Brother & Chipman negotiated through brokers a sale of the 155 bales to the defendants for $17,088.14, and Jenkins gave Hulbert two orders, signed by the firm, the first for the delivery of 54 bales, and the second of 101 bales, to the defendants, on which orders Hulbert delivered, and the

defendants received, the cotton, that day and the next. These orders were each entitled " Delivery Order for the Union Wharf Warehouse," requested " Mr. Charles Hulbert" (without other description of his capacity) to " please deliver" to the defendants the number of bales of cotton named in each, specified the marks and numbers of the bales, and were stamped by Hulbert with his warehouse stamp before he made the deliveries under them. Jenkins gave the defendants a bill of the cotton in the name of his firm; and on December 8 the defendants, after receiving the cotton, gave him, in part payment of the price, their check on a bank for $15,000 payable to the order of the firm, which check he immediately indorsed with the firm name, and delivered to Hulbert. In all these transactions, neither the brokers who negotiated the sale, nor the defendants, knew, nor was it disclosed to them, that any person other than the firm had any interest in or claim on the cotton.

The firm stopped payment on December 8, after the indorsement and delivery of the check by Jenkins to Hulbert. Hulbert first learned of their failure on December 9; and on December 10 he gave notice to the defendants " that he held said cotton in pledge," and demanded of them, in writing, payment to himself of the balance of $2088.14 of the price of it, stating in the demand that this balance belonged to him, the cotton sold being held by him as collateral security. The defendants paid Hulbert $2088.14 on February 6, 1869, taking from him a bond of indemnity; and it is this amount which was the subject of this action. Jenkins, Brother & Chipman filed their petition in bankruptcy December 26, 1868; and the plaintiffs were appointed their assignees in bankruptcy January 19, 1869, and shortly after their appointment, and before February 6, made demand on the defendants for the payment of the amount to themselves. In the schedules which the firm filed on December 26, 1868, with their petition in bankruptcy, it was stated that Hulbert held as security for their debt to him a claim against the defendants for $2088.14 as a balance due on the price of cotton sold and delivered to the defendants which Hulbert had held for his security.

The judge ruled that these facts would not sustain the action, and directed a verdict for the defendants. The plaintiffs alleged exceptions.

*R. D. Smith*, for the plaintiffs. To constitute a valid pledge, possession must be in the pledgee, and when it is relinquished all his rights are gone. *Kimball* v. *Hildreth*, 8 Allen, 167, 168. Story on Bailments, § 287. This pledgee parted with the cotton by a redelivery or surrender upon an order from the pledgor, (making thereby the only delivery a warehouseman ever makes,) and relinquished his possession, trusting to the pledgor's word that he would bring him the proceeds of a sale. If he could let the cotton pass to the pledgor's appointee on this promise, he might have left it at the pledgor's shop, to be sold on his account and the proceeds transmitted to him as received. *Bodenhammer* v. *Newsom*, 5 Jones (No. Ca.) 107.

*J. D. Ball*, for the defendants, was not called upon.

WELLS, J. The facts reported do not show a waiver of his lien by Hulbert; nor such an abandonment of possession as would discharge or destroy the lien. By the terms of the pledge, he was authorized to make a sale of the property, and apply the proceeds to the payment of his debt. He could do this through agents, as well as personally. There was nothing in the nature of the transactions, or the relations of the parties, to prevent his employing the debtors themselves as such agents. By allowing them to contract in their own names he took the usual risks of such an authority; and if the purchasers had paid the agents in full, he could not have reclaimed the goods nor recovered the price, but would have been compelled to look only to his agents for the proceeds. He also retained the rights of a principal; and, by notifying the purchaser of those rights, became entitled to receive the unpaid purchase money in preference to his agents.

We do not understand that a pledgee loses his lien by permitting the pledgor to have possession or control of the property for a special and limited purpose, consistent with the enforcement of the lien, and not for his own use merely. *Walker* v. *Staples*, 5 Allen, 34. The general owner may be the depositary

of his own pledgee. Story on Bailments, §§ 58, 230. The formal possession of the depositary or agent is the legal possession of the depositor or principal.

The plaintiffs rely mainly upon the case of *Kimball* v. *Hildreth*, 8 Allen, 167. The general language of the opinion in that case requires to be understood with some qualification, as suggested in the previous case of *Walker* v. *Staples* cited in its support. But the point decided does not conflict with the position of the defendants here. The judgment could not determine the rights of the pledgee, who was not a party, as against his pledgor, under the several contracts between them. It may be questioned whether anything was decided except that the obligations of the defendant, as depositary or borrower, precluded him from setting the possessory claim of a pledgee, who was a stranger to the bailment out of which the suit arose, against his depositor or lender, who was also the general owner. Story on Bailments, §§ 110, 266. Edwards on Bailments, 83, 87. For the purposes of that suit, and as affecting that contract of bailment, the previous pledge was held to be ineffectual by reason of the temporary surrender of possession to the general owner, by whom it was made. In that case the property had been redelivered to the pledgor, apparently for his own purposes and use. At least, we think the court must have so understood or assumed the fact to be, from the answer of the defendant. The loan of the property to the defendant was not a contract in which the pledgee could intervene as principal, on the ground that the plaintiff was his agent in making it. In both these particulars the present case differs from that. Hulbert has never redelivered the property to the pledgors, nor relinquished to them his possession, except for the single purpose of the sale, which was contemplated by the contract of pledge. Having asserted his rights as principal in that transaction, received the price, and discharged the defendants from their liability on account of their purchase, they cannot thereafter be held to pay the same again to those who were his agents in making the sale. The verdict was therefore rightly ordered for the defendants.                  *Exceptions overruled.*