FRANCIS E. STOLLENWERCK & others *vs.* HENRY C. THACHER & another.

Suffolk.    March 19, 1873. — June 18, 1874.    WELLS, COLT & DEVENS, JJ., absent.

A cotton broker solicited orders for a firm of cotton buyers, receiving a commission of a fixed sum per bale from them, and looked to them and not to the cotton for its payment; each party paid its own expenses; in pursuance of an order procured by the broker, the firm obtained cotton, and sent the invoices thereof to the purchaser, and the bills of lading with drafts attached to the broker, with instructions not to deliver the bills of lading until the drafts were paid. *Held*, that the broker was not the partner, nor the general agent or factor of the firm, intrusted with the goods for sale, within the Gen. Sts. c. 54.

A special agent, authorized to deliver a bill of lading only upon payment of the bill of exchange drawn against the goods and attached to the bill of lading, cannot bind his principal by a delivery made without such payment.

If a bill of lading of goods is indorsed in blank and delivered to an agent of the owner for a special purpose, who is not authorized to sell or pledge the goods, a person who gets possession of it without the assent of the owner, although with the assent of the agent, acquires no title in the goods as against the principal.

A bill of lading, even when running to order or assigns, is not a negotiable instrument, like a bill of exchange, but a symbol or representative of the goods to which it relates.

A special agent cannot enlarge his authority by his own statements so as to bind his principal.

A., the owner of cotton, agreed to sell it to B., and sent it to his special agent with a bill of lading running to A. and indorsed by him in blank, with directions to hold the bill of lading until a draft drawn on B. for the price of the cotton was paid. The agent delivered the bill of lading to B. on his accepting the draft, but before he paid it. B. obtained the cotton of a common carrier, and paid the freight, and then pledged the cotton to C. for advances on the cotton. *Held*, in an action by A. against C. for the conversion of the cotton, that the measure of damages was the market value of the cotton at the time of the conversion, less the freight paid, but that commissions which would have been due B. had he paid for the cotton were not to be deducted.

TORT for the conversion of one hundred and eighty-nine bales of cotton. At the trial, before *Morton*, J., the jury were directed to find a verdict for the plaintiffs, and the case was reported for the consideration of the full court, and is stated in the opinion.

*H. W. Paine & R. D. Smith*, for the defendants.

*S. Bartlett & D. Thaxter*, for the plaintiffs.

GRAY, C. J.    This is an action of tort for the conversion of a number of bales of cotton. A verdict has been ordered for the plaintiffs, and the case reserved for the determination of the full

court upon a report containing an abstract of the evidence given at the trial, and a number of letters and documents. But the facts material to the decision, assuming all the controverted ones to be according to the testimony introduced by the defendants, are not many ; and a brief statement of them will tend greatly to narrow the discussion of the principles of law by which the case is governed.

The plaintiffs, being buyers of cotton in Mobile, made an arrangement with Joseph I. Baker, a cotton broker in Boston, by which they agreed to pay him, upon such orders on them as he should obtain from his customers here, fifty cents a bale, out of their own commission of one and a half per cent., furnish him with types of their classification of cotton, and keep him advised at their own expense of the condition of the cotton market in Mobile ; he agreed to procure and transmit the orders, and inform his customers of their acceptance or rejection ; and the invoices were to be sent by the plaintiffs to, and the drafts for the price drawn upon, the customers, and the bills of lading attached to the drafts.

In pursuance of an order given him by Gorham Gray & Company, Baker telegraphed to the plaintiffs to buy for them two hundred bales of cotton. The plaintiffs replied, refusing to negotiate on any other basis than that the bill of lading should be attached to the draft. They bought the cotton in Mobile, drew a bill of exchange on Gray & Company against the cotton, took the bill of lading in their own name, indorsed it in blank, attached it to the bill of exchange, procured the latter to be discounted at a bank in Mobile, informed Baker of what they had done, and instructed him, on receiving the draft and bill of lading, to hold the bill of lading until the draft was paid. Baker by telegram and letter assented to all this. The invoice sent by the plaintiffs to Gray & Company showed that the cotton was consigned to the plaintiffs' order. The Mobile Bank transmitted the draft, with the bill of lading attached, to a bank in Boston, which presented the draft to Gray & Company for acceptance. Upon such presentment, Gray & Company asked for the bill of lading, and were told that Baker was to receive it  Gray & Company then accepted the draft, the bank delivered the bill of lading to Baker, and he afterwards delivered it to Gray & Company, who obtained the cotton

from the carriers, gave them a check for the amount of the freight from Mobile to Boston, and pledged the cotton and delivered the bill of lading to the defendants as security for the payment of advances on the cotton. Gray testified that he accepted the draft upon Baker's assurance that he would hand him the bill of lading as soon as it came to Baker's possession, that Baker shortly afterwards delivered to him the bill of lading unconditionally, and that he transferred the cotton to the defendants believing that he owned it ; and his testimony, though contradicted by Baker's, must be assumed to be true for the purpose of deciding whether a verdict was rightly ordered for the plaintiffs.

Baker and the plaintiffs were not partners as between themselves, and Gray & Company did not deal with Baker as a partner of the plaintiffs. His relation to the plaintiffs was that of a broker only. He looked to them, and not to the cotton, for the payment of his commission. The case is not within the Gen. Sts. *c.* 54.* Baker was not a factor, or a general agent intrusted with the goods for the purpose of sale; but a special agent, with positive and restricted instructions to receive the bill of lading on the acceptance of the draft, hold the bill of lading and the cotton until the draft was paid, and then deliver them to Gray & Company. He had no right of possession of the bill of lading or the cotton for any other purpose, and no title in or lien on the cotton. This is not a case of stoppage *in transitu.* Gray & Company were not named in the bill of lading as consignees of the cotton, and the plaintiffs have never been divested of their property in the cotton as against Gray & Company or any persons claiming under them.

The numerous cases cited at the bar differ in their circumstances rather than in the statement of principles. A bill of lading, even when in terms running to order or assigns, is not negotiable, like a bill of exchange, but a symbol or representative of the goods themselves ; and the rights arising out of the transfer of a bill of lading correspond, not to those arising out of

* Gen. Sts. *c.* 54, § 2, provide that, " Every factor or other agent intrusted with the possession of merchandise, or a bill of lading consigning merchandise to him, for the purpose of sale, shall be deemed to be the true owner thereof so far as to give validity to any bonâ fide contract made by him with any other person for the sale of the whole or any part of such merchandise.'

the indorsement of a negotiable promise for the payment of money, but to those arising out of a delivery of the property itself under similar circumstances. If the bill of lading is once assigned or indorsed generally by the original holder, upon or with a view to a sale of the property, any subsequent transfer thereof to a *bonâ fide* purchaser may indeed give him a good title as against the original owner. But so long as the bill of lading remains in the hands of the original party, or of an agent intrusted with it for a special purpose, and not authorized to sell or pledge the goods, a person who gets possession of it without the authority of the owner, although with the assent of the agent, acquires no title as against the principal. *National Bank of Green Bay* v. *Dearborn, ante,* 219. *Gurney* v. *Behrend,* 3 E. & B. 622, 632. *Pease* v. *Gloahec,* L. R. 1 P. C. 219, 228.

In the present case, Baker, being a special agent authorized to deliver the bill of lading only upon payment of the bill of exchange drawn against the goods and attached to the bill of lading, could not bind his principals by a delivery made without such payment. To hold otherwise would be to allow a person; intrusted with goods merely for the purpose of collecting the price and then delivering them, to sell them on credit. The authority of Baker, being special and limited, could not be enlarged by his own declarations. *Mussey* v. *Beecher,* 3 Cush. 511.

It follows that Gray & Company, not having paid the draft, nor acquired possession of the bill of lading with the plaintiffs' consent, had no property in the goods, and could convey none to the defendants, so as to defeat the plaintiffs' title. The plaintiffs are therefore entitled to recover.

This is not an action in the nature of assumpsit for the pro ceeds of a sale of the property, in which the plaintiffs might be deemed to have waived any tort, and be obliged to submit to a deduction of the expenses of the sale by which such proceeds had been obtained. It is an action in the nature of trover for the conversion of the goods, in which the plaintiffs are entitled to recover their market value at the time of the conversion by the defendants, and are not obliged to allow a commission to Gray & Company for doing an act which is not shown to have been for the interest or according to the intent of the plaintiffs. *Bartlett* v. *Bramhall,* 3 Gray, 257.

But the amount paid by Gray & Company to discharge the lien which the carriers had against the plaintiffs for the freight on the cotton enured to the benefit of the plaintiffs, and should be deducted from the market value of the goods. *Adams* v. *O'Connor*, 100 Mass. 515. *Whitney* v. *Beckford*, 105 Mass. 267. That amount must therefore, unless the parties agree upon it, be ascertained by an assessor, pursuant to the terms of the report, the verdict amended accordingly, and

*Judgment rendered thereon for the plaintiffs.*