## HENRY C. THACHER *vs.* JOSEPH B. MOORS.

Suffolk.   March 9, 1880; Nov. 9, 1881; Jan. 19. — 20, 1883.   W. ALLEN, J., absent.   HOLMES, J., did not sit.

J., who did business in wool as a broker, as a commission merchant and as a warehouseman, applied to the plaintiff to take a consignment of wool from F., and to make advances thereon. The plaintiff agreed to take the wool, and J. subsequently delivered to him a railroad receipt, in which the wool was stated to have been received of F. and to be consigned to the plaintiff, and also an invoice, signed by F., which stated that the wool was consigned to the plaintiff for sale on account of F. On the arrival of the wool, the plaintiff gave the carrier an order to deliver it to J., and received from J. a receipt stating that he received the wool for the plaintiff's account, F. consignment; and the plaintiff paid drafts on the wool to the amount he had agreed to advance, some of the drafts being payable to the order of J. The plaintiff gave J. no authority

to sell the wool as a factor or consignee, but entrusted it to him as a warehouse-man, for the purposes of sale, and with authority as broker to receive offers for it and to negotiate sales, to be reported to and settled by the plaintiff. While the wool was thus in J.'s possession, J. stated to the defendant, who knew that J. was a warehouseman, broker and merchant, that he owned the wool, and pledged it to him for a valuable consideration. The defendant acted in good faith; and, before lending money upon the wool, J. had the wool put in the ware-house of a third person, who gave a warehouse receipt for it. *Held*, in an action of tort for the conversion of the wool, that J. was not a factor or other agent entrusted with the possession of merchandise for sale, within the Gen. Sts. *c.* 54, § 2, nor a person entrusted with merchandise, and having authority to sell or consign the same, within § 3, nor a consignee or factor having possession of merchandise with authority to sell the same, within § 4; and that the plaintiff was entitled to maintain the action. *Held, also,* that the fact that J. and F. were jointly interested in the wool, J. having the right to dispose of it, and that the plaintiff, in ignorance of this fact, placed the wool in J.'s possession, did not affect his right to maintain the action.

A warehouseman, with whom goods were stored on A.'s account, pledged them to B., who removed them to another warehouse, and subsequently sold them, as pledgee. *Held*, that B. converted the goods when he removed them under a claim of right of property in them.

TORT for the conversion of 184 bags of wool. Writ dated January 12, 1878. Trial in this court, without a jury, at Sep-tember term 1879, before *Ames*, J., who reported the case for the consideration of the full court, in substance as follows:

At the time of the transactions hereinafter stated, the plain-tiff was a merchant, doing business in Boston under the name of H. C. Thacher and Company, and was engaged in buying, selling and receiving consignments of wool for sale on commis-sion, and making advances upon said consignments; and the defendant was a banker, doing business in Boston under the name of J. B. Moors and Company.

One Isaac H. Jones, Jr., up to about November 15, 1877, when he absconded, carried on business in Boston, having his office in Federal Street. Upon the sign on his office door were the words "Wool Broker;" at the entrance of the building in which he had his office was painted the word "Wool;" upon some of his business cards he was styled "Wool Broker," upon others, "Wool Broker and Commission Merchant," and upon his bill-heads, "Wool Commission Merchant." It appeared that he did business in wool, partly as a broker, to a considerable extent on his own account, and sometimes as a commission merchant. He had two large lofts suitable for the storage and exhibition of

wool, in which, in addition to his other business, he was accustomed to store wool as a warehouseman for other persons, and also wool belonging or consigned to himself. Jones had a price on, and offered for sale as a broker, all wools in his stores, but there was no evidence that the plaintiff knew this. Jones had had large transactions with the plaintiff, both as a broker and on his own account.

The defendant had known Jones for about four years and a half; had visited his office in Federal Street; had on one occasion stored wool with him as a warehouseman, and upon all the evidence must be assumed to have known his general course of business, and that he acted in the different capacities of broker and merchant and warehouseman.

Before July 1877, Jones applied to the plaintiff to take consignments of wool to be made to him by George B. Fessenden, of Wells River, Vermont. The plaintiff agreed to accept such consignments, and to advance about three fourths of their value. No agreement was made by the plaintiff with Jones at the time as to warehousing or selling said wool, or as to Jones's acting as a broker in the sale of the same.

On July 9, 1877, the first consignment was made. A railroad receipt and an invoice were enclosed in a letter to Jones, and were brought and delivered by him to the plaintiff, in whose possession they have since remained. The receipt was signed by the agent of a railroad company in New Hampshire, and stated that a certain number of sacks of wool were " received of G. B. Fessenden " and were " consigned to H. C. Thacher & Co., Boston." The invoice was headed, " Invoice of forty-five bags wool consigned to H. C. Thacher & Co. for sale for my account," and was signed " Geo. B. Fessenden." Upon the arrival of the wool in Boston, the plaintiff gave orders to the carrier to deliver it to a truckman who acted frequently for Jones, to be stored in Jones's lofts, and received from Jones the following receipt: " Boston, July 12, 1877. Received in store 102 Federal Street, for ac. H. C. Thacher & Co. 45 bags fleece wool, Fessenden consgt. ac. I. H. Jones, Jr." All the subsequent consignments were made in the same way, and similar receipts for all the consignments were given by Jones to the plaintiff. The plaintiff paid drafts upon him for three

fourths of the value of the parcels of wool as consigned, and also paid freight to the carrier. The wool in controversy is part of said consignments. Some of the drafts on the plaintiff were payable to the order of Jones.

The wool was bought by Fessenden upon joint account with Jones, under an arrangement between them, by which Fessenden was to buy the wool of the farmers in Vermont, and Jones was to find the money (either furnishing it himself or procuring some one else to advance upon the wool) and have control of the sale of it in Boston, and the profits were to be divided between them. The plaintiff had no knowledge of this arrangement until after Jones absconded; and had no reason to suppose or suspect that Jones had any interest in the wool, or was a partner with Fessenden in the transaction. The plaintiff did not intentionally give up the control of the wool, or intend to part with his rights in delivering the same to Jones, as before stated. Jones advanced money in excess of that advanced by the plaintiff.

The wool after being received in Jones's lofts was sorted, by an order of the plaintiff given to Jones, by cutting open each bag and separating the different kinds of fleeces, one from the others. The different kinds were then put into new and separate bags. This sorting is customary, and is necessary to put the wool into a condition to be exhibited to buyers. While the wool was lying open, it was seen by the plaintiff in Jones's lofts.

Jones had no authority from the plaintiff to sell said wool as a factor or consignee, but said wool was entrusted by the plaintiff to Jones as a warehouseman, for the purposes of sale, and with authority as broker to receive offers for and to negotiate sales of the same, to be reported to and settled by the plaintiff, in whose name the bills of sale were made, and who collected the price. Jones, as such broker, showed the wool to his customers, for the purpose of getting offers to purchase it; and, in two cases, reported to the plaintiff offers for two several lots, which were accepted by the plaintiff. Jones then made a broker's memorandum or bought-and-sold note, which he rendered to the plaintiff. The plaintiff then ordered the wool weighed, and sent a bill of parcels, with a certificate of weights, to the buyer, from whom he received the price, or a negotiable

security in payment thereof, without previous direct communication between himself and the buyer. Jones received a broker's commission on the sales, and also warehouse charges. Jones did not (before the transactions with the defendant) sell any of the wool in his own name, or receive the proceeds himself, as a consignee or factor usually does, and had no authority from the plaintiff to dispose of the wool as if he were a consignee or factor. Jones entered this wool in the books in which he kept account of wool stored by him as a warehouseman, including all wools consigned to him; and also entered it in a separate book under head of "Fessenden Joint Account." These were the only sales of this wool in which Jones took any part, and in both of these cases Jones consulted the plaintiff as to the price.

Jones, while said wool, with other wool belonging to the plaintiff and for which the plaintiff held his receipts, was in his lofts, applied to the defendant at various times for loans of money upon pledges of different parcels of wool, of which he produced a memorandum and of which he said he was the owner, which statements were afterwards incorporated into contracts of pledge made with the defendant. The defendant examined samples of the wool, and agreed to make Jones loans on it, upon his having the wool put in store in the lofts of George B. Drake & Co., wool commission merchants, whose store was next to that of Jones, and bringing him a warehouse receipt therefor in each instance. The warehouse receipts were signed by George B. Drake & Co. upon printed blanks furnished by the defendant. At different times, from July 27 to November 10, 1877, Jones pledged to the defendant the different parcels making up the wool in controversy. The defendant acted in good faith, but did not ask Jones to exhibit any bill of sale, or bill of lading, or invoice, or other document of title; nor did he examine Jones's books, or see any document of title, except the warehouse receipts of George B. Drake & Co. The defendant simply asked Jones if he owned the wool, and Jones replied that he did; and the defendant relied upon this assurance and upon Jones's possession.

Neither the plaintiff nor the defendant had seen or asked to see any of Jones's books until after he absconded. As soon

as the defendant learned that Jones had absconded, he made demand under his contracts of pledge, sought a purchaser, negotiated a sale of all the wool held by him in pledge from Jones, including the wool in controversy, and on November 22, 1877, sold the same.

Before suit, and upon the day of the date of the writ, the plaintiff demanded of the defendant the wool in controversy, and the defendant refused to deliver the same.

Upon the foregoing facts, the judge ruled, as matter of law, as follows: 1. The plaintiff had a right to consider Fessenden the owner of the wool, and had, under the Gen. Sts. c. 54, § 1, a lien upon it for his advances. 2. The receipts which the plaintiff took from Jones, whether they are in the usual form of warehouse receipts or not, implied that Jones held the wool for the plaintiff, and that the latter had not lost his lien by delivering the wool to Jones, under the circumstances stated. 3. Under the Gen. Sts. c. 54, §§ 3, 4, Jones was neither a ."person entrusted with" the disposal of the wool, "and having authority to sell or consign the same," nor "a consignee or factor having possession of" the wool "with authority to sell the same," "or having possession of a bill of lading, permit, certificate or order for the delivery of" the wool "with like authority." 4. Under the Gen. Sts. c. 54, §§ 3, 5, Jones was not in fact invested by the plaintiff with the *jus disponendi* of the wool. He had no authority from the plaintiff to sell or consign the same; it was not in his possession as consignee or factor having authority to sell; and he had possession of no bill of lading, permit, certificate or order for the delivery of the wool with like authority. 5. As the defendant knew that Jones was a wool-broker and warehouseman, as well as a dealer in wool on his own account and as a commission merchant, and as no bill of lading, document or writing of any kind in relation to Jones's title in the wool had been called for or exhibited, the mere possession of the property, and the oral assertion of Jones that it was his, would not, as matter of law, furnish or amount to "probable cause," within the meaning of the statute; and it was the defendant's duty, in such a state of facts, to have made further inquiry, and to have required further evidence of Jones's right to dispose of the property. 6. The defendant was guilty of a

conversion of the wool in controversy when the different parcels thereof were received by him in pledge from Jones; or, if not then, upon November 22, 1877, when he sold the wool; or, if not then, upon January 12, 1878, the date of the plaintiff's demand.

The judge thereupon found for the plaintiff. If, upon the facts found and the rulings, or any of them, the plaintiff was entitled to recover, by agreement of parties the case was to be sent to an assessor to determine the plaintiff's damages, according to the rules prescribed by the court, and judgment entered for the amount of damages found by such assessor; otherwise, the finding to be set aside and a new trial ordered.

The case was argued at the bar, in March 1880, by *G. O. Shattuck & O. W. Holmes, Jr.*, for the defendant, and by *H. W. Paine & R. D. Smith, (M. M. Weston* with them,) for the plaintiff; and was reargued, in November 1881, by *Shattuck & Holmes*, for the defendant, and by *Smith, (Weston* with him,) for the plaintiff; and was again reargued, in January 1883, by *Shattuck & W. A. Munroe*, for the defendant, and by *Smith, (Weston* with him,) for the plaintiff.

FIELD, J. It is convenient to consider this case, in the first instance, as if Jones originally had no interest in this wool, and had none at any time except what he derived from the plaintiff, and then to consider what is the effect upon the rights of the parties of the facts, that the wool was originally bought by Fessenden " upon joint account with Jones, under an arrangement between them, by which Fessenden was to buy the wool of the farmers in Vermont, and Jones was to find the money (either furnishing it himself or procuring some one else to advance upon the wool) and have control of the sale of it in Boston, and the profits were to be divided between them," and that Jones under this arrangement procured the advances to be made by the plaintiff, and furnished other money of his own, and retained his interest in the wool until the sale of it by the defendant.

Disregarding then this interest of Jones, the plaintiff was the consignee of the wool for sale on account of Fessenden, to whom he had made advances; the wool had been shipped to him for sale, and railroad receipts and invoices sent him; the wool had been received, and, by the plaintiff's orders to the railroad

company, had been delivered to a truckman and stored in the lofts of Jones.

The report finds that " Jones had no authority from the plaintiff to sell said wool as a factor or consignee, but said wool was entrusted by the plaintiff to Jones as a warehouseman, for the purposes of sale, and with authority as broker to receive offers for and to negotiate sales of the same, to be reported to and settled by the plaintiff, in whose name the bills of sale were made, and who collected the price."

The meaning of the clause that the wool was entrusted by the plaintiff to Jones as a warehouseman, for the purposes of sale, as qualified by the words which follow, and other words of the report, is that the wool was stored with Jones in order that it might be sold, and that Jones was authorized as a broker to negotiate sales, to be reported to the plaintiff, the terms of which were to be settled by him. Jones had no express authority to make and conclude sales himself, and, as a warehouseman, he had no such implied authority. He was not therefore either a " factor or other agent entrusted with the possession of merchandise for the purpose of sale," within the meaning of the Gen. Sts. *c.* 54, § 2. (And this section does not give validity to a pledge. *Michigan State Bank* v. *Gardner*, 15 Gray, 362.) Nor was he " a person entrusted with merchandise, and having authority to sell or consign the same," within the meaning of the Gen. Sts. *c.* 54, § 3. In these sections the words " for the purpose of sale," and the words " having authority to sell," mean much the same thing; which is, that in the one case the factor or other agent is entrusted with the possession of the merchandise " for the purpose of sale " by him, so that he can himself make a sale and transfer the title to the merchandise ; and, in the other, that the person entrusted with the merchandise has, as a person so entrusted, authority given him to sell or consign it. The same construction must be given to similar words in § 4. See *Stollenwerck* v. *Thacher*, 115 Mass. 224 ; *Nickerson* v. *Darrow*, 5 Allen, 419.

A warehouseman who is also a broker, with authority only to receive offers for merchandise stored with him as warehouseman, and report them to his principal, who concludes the sale, if any is made, is not within the provisions of either of these sections.

The pledge of this wool to the defendant, therefore, is not protected by the statute; and the facts show that it was made by Jones without any authority from the plaintiff, and without any acts done by the plaintiff whereby the defendant was misled into the belief that Jones had any such authority, whether as owner or otherwise. The fact that he found the wool in the store of Jones, which he knew was used by Jones " to store wool as a warehouseman for other persons, and also wool belonging or consigned to himself," does not bring the case within the decisions upon ostensible or apparent ownership. Neither the railroad receipt nor the invoice was delivered by the plaintiff to Jones, but both were retained by the plaintiff; and Jones, so far as it appeared to the defendant, was no more the ostensible owner of this wool than of any other wool stored with him as warehouseman. The assertion of Jones that he owned the wool was incompetent, as evidence of ownership, against the plaintiff, and could not enlarge his authority as agent. *Mussey* v. *Beecher*, 3 Cush. 511. *Stollenwerck* v. *Thacher, ubi supra.*

There remains to be considered the effect upon the rights of the parties of the interest which Jones had in the wool. It is perhaps not important to determine exactly the respective rights of Fessenden and Jones under their agreement; but we assume that Fessenden and Jones were partners in this adventure, with the right in Jones as against his copartner of controlling the sale of the wool in Boston; and, for the purpose of considering the principal questions in this case, we shall treat Jones as the general owner.

It is argued that, as Jones was the general owner, and had all the rights of an owner to sell or pledge the wool, the lien of the plaintiff was lost by the plaintiff's delivering possession of it to Jones in the manner and under the circumstances which have been stated in the report. Whatever the authority of Fessenden, under his agreement with Jones, may have been to consign the wool to the plaintiff, it is plain that, if the plaintiff had retained possession of the wool, he would have had a valid lien upon it for his advances against Jones, both by virtue of the Gen. Sts. *c.* 54, § 1, and by the general principles of law, because Jones had procured the consignment to be made to the plaintiff, and by his acts was estopped from setting up, against

the plaintiff, any title to the wool inconsistent with the validity of the lien acquired by the plaintiff as consignee. The interest of the plaintiff in this merchandise was that of a consignee for sale who had made advances upon it, and his rights and duties in most respects are well defined in the law. The possession of a warehouseman, although he has a lien for his charges, is not inconsistent with the possession of the consignee, and it is in accordance with the usage of commission merchants to store merchandise consigned to them in warehouses. A consignee's rights in the merchandise are not lost by putting the merchandise in the warehouse of another person, to be stored until it can be sold. The plaintiff never intended to relinquish his lien, or even to put the property into the possession of the owner; but it is argued that, as he did intend to put it into the possession of Jones, who was the owner, although the plaintiff did not know it, this union of possession and general property in Jones enabled him to convey a good title to an innocent pledgee for value. No decided case has gone so far as this. It has not even been decided in this Commonwealth, that, if the plaintiff had known that Jones was the owner of the merchandise, the deposit of it in good faith with him as a warehouseman, with authority to negotiate sales as a broker, to be concluded by the plaintiff, would have enabled Jones to vest a good title in an innocent purchaser by a sale made by him on his own account. *Macomber* v. *Parker*, 14 Pick. 497. *Walker* v. *Staples*, 5 Allen, 34. *Thayer* v. *Dwight*, 104 Mass. 254. See *Casey* v. *Cavaroc*, 96 U. S. 467; *Clark* v. *Iselin*, 21 Wall. 360; *Thompson* v. *Dolliver*, 132 Mass. 103.

In this Commonwealth, although a sale of personal chattels is not valid against a subsequent purchaser, without delivery, yet, if there has been a delivery, possession by the vendor is only evidence of fraud, and the sale is not void against a subsequent purchaser, unless fraud in fact is proved. *Zuchtmann* v. *Roberts*, 109 Mass. 53. *Ingalls* v. *Herrick*, 108 Mass. 351. *Thorndike* v. *Bath*, 114 Mass. 116. *Dempsey* v. *Gardner*, 127 Mass. 381.

In conditional sales, possession by the vendee does not enable him to convey a good title to a purchaser. The cases here and elsewhere are numerous where the pledgee has lost his lien by

delivering the pledge to his pledgor, to be used by him or to be held by him for his own use, or to be held by him with a right to substitute other property for that originally pledged; but possession obtained by the pledgor by force or fraud has never yet been held to destroy the lien of the pledgee, unless the delivery, although fraudulently obtained, was with the intention on the part of the pledgee that the pledgor might treat the pledge as his own property. The mere fact that the pledgor has possession, so that in him the possession and the general ownership are united, does not, as matter of law, destroy the lien of the pledgee, without regard to the circumstances under which, or the purpose for which, the possession was obtained. *Macomber* v. *Parker, ubi supra. Walcott* v. *Keith*, 2 Foster, 196. To hold that the union of possession and general property in the same person, however acquired, necessarily destroys the special property of a consignee of merchandise, would enable warehousemen, who hold merchandise in store for commission merchants, to buy in the title of their consignors, and thus obtain full control over the disposition of the merchandise stored, without the authority or knowledge of the consignees.

In all the cases cited by the defendant * in which it has been held that the lien of a pledgee was lost, the property pledged had been delivered to the pledgor by the pledgee, knowing him to be the pledgor, and the pledgor had been authorized to hold the property, or to make some use or disposition of it for his own benefit in a manner inconsistent with keeping it solely as agent, and for the benefit, of the pledgee, except the case of *Geddes* v. *Bennett*, 6 La. An. 516, and there the circumstances were such as in the opinion of the court to estop the plaintiffs from claiming their lien, even if they had one, which it seems they had not as against third persons, because the provisions of the Code of Louisiana had not been complied with.

---

* The defendant cited on this point *Bodenhammer* v. *Newsom*, 5 Jones (N. C.) 107; *Geddes* v. *Bennett*, 6 La. An. 516; *Way* v. *Davidson*, 12 Gray, 465, 467; *Walker* v. *Staples*, 5 Allen, 34; *Kimball* v. *Hildreth*, 8 Allen, 167; *Thompson* v. *Dolliver*, 132 Mass. 103; *McFarland* v. *Wheeler*, 26 Wend. 467; *Black* v. *Bogert*, 65 N. Y. 601; *Farmers & Mechanics' Bank* v. *Logan*, 74 N. Y. 568; *Day* v. *Swift*, 48 Maine, 368; *Collins* v. *Buck*, 63 Maine, 459; *Casey* v. *Cavaroc*, 96 U. S. 467, 485; *Tatham* v. *Andree*, 1 Moore P. C. (N. S.) 386.

But it is unnecessary to consider what would be the result, if the interest which Jones had in the merchandise had been known to the plaintiff. The want of such knowledge is decisive. The plaintiff cannot be held to have intended that Jones should exercise any of the rights of ownership over the merchandise on account of his delivery of it to him, because he did not know that Jones was an owner, and it was not a consequence naturally to be expected from delivering the merchandise to him to be stored that it would come into the possession of the general owner; and in no legal sense can the plaintiff be said to have voluntarily delivered the merchandise into the hands of the general owner. In the absence of any act or conduct which, in law, prevents a consignee of merchandise for sale from setting up his rights of property by reason of an apparent ownership or authority to sell which he has conferred upon another, those rights are lost only by his dealing with the merchandise in a manner inconsistent with the bailment, or inconsistent with his possession and preservation of the merchandise solely for the purpose of sale under the consignment, or by dealing with it in such a manner that an intention to abandon or relinquish his rights can be inferred.

In this case there has been no such dealing with the merchandise, and no such intention can be inferred. The right which Jones had as owner to sell his interest in the property, subject to the right of the plaintiff, is not an authority to sell within the meaning of the Gen. Sts. *c.* 54. That chapter has no reference to the right of an owner of merchandise to sell as owner, but to the authority to sell given to consignees, factors, agents, or other persons entrusted with the possession of merchandise. See *Jenkyns* v. *Usborne*, 7 Man. & G. 678; *Fuentes* v. *Montis*, L. R. 3 C. P. 268, and L. R. 4 C. P. 93.

The rulings of the justice before whom this case was tried were therefore correct; and the defendant has converted the wool to his own use. It was a conversion when the wool was taken from the possession of Jones by order of the defendant, under a claim of a right of property in it, and was stored with Drake and Company, subject, and deliverable only, to the order of the defendant. *Stanley* v. *Gaylord*, 1 Cush. 536. *Moody* v. *Blake*, 117 Mass. 23. *Bearce* v. *Bowker*, 115 Mass. 129.

The justice before whom the case was tried found for the plaintiff, and reported the case to the full court, with the statement that, "if the plaintiff was entitled to recover, by agreement of parties, the case was to be sent to an assessor to determine the plaintiff's damages, according to the rules prescribed by the court." The ordinary rule of damages is the market value of the property at the time of the conversion, with interest from that time, and a consignee of merchandise is entitled to recover full damages, and is responsible over to his consignor for any balance remaining after satisfying his claims upon the property. *Ullman* v. *Barnard*, 7 Gray, 554.

Whether the amount of the damages, thus estimated, is greater than the amount of the money for which the plaintiff had a lien on the property, the report does not show; and, if so, whether the defendant has so far succeeded to the rights of the owners that he is entitled to retain or deduct from these damages the surplus which remains after satisfying the claims of the plaintiff, the report does not enable us accurately to determine. See *Chamberlin* v. *Shaw*, 18 Pick. 278, 283; *Spoor* v. *Holland*, 8 Wend. 445; *Ingersoll* v. *Van Bokkelin*, 7 Cow. 670.

In accordance with the terms of the report, an assessor must be appointed to assess damages as of the full value of the property; but, if desired by the defendant, he may have authority, as auditor, to hear and report any facts, in addition to those found in this report, bearing upon the right of the defendant to retain the surplus, if any, remaining after satisfying the claims of the plaintiff upon the property.

*Ordered accordingly.*