William G. Choate, Referee.
In this case I think that the plaintiffs upon acceptance of the vendors’ draft *5 for the price of the goods, and the receipt by them of the bills of lading which were to the shippers’ order and ■endorsed, became vested with the title or general ownership of the goods to which Arguimbau, Wallis & Co. could become entitled only by remitting funds to cover the ■acceptances (Farmers’ Bank v. Logan, 74 N. Y. 568; Dows v. Bank, 91 U. S. 618). The defendant’s theory that upon the acceptance of the drafts the title passed from the shippers to Arguimbau, Wallis & Co., the intended ultimate owners, on whose order they were purchased, is inconsistent with the cases above cited, and the authorities on which they rest and with the fact ■clearly shown of the intention of the plaintiffs to hold the proofs of title in themselves till payment by the defendants. They transmitted the bills of lading and shipping documents, not to the defendants, but to their own agents :in New York.
The agreement between the plaintiffs and Arguimbau, Wallis & Co., evidenced by the receipt for the shipping documents and given to the plaintiffs’ agents, Fabbri & Chauncey, whereby Arguimbau, Wallis & Co. agreed to remit the required funds and meanwhile to hold the goods '“ under lien ” and “subject to the order of Messrs. Fabbri & Chauncey as agents of and for account of Messrs. Jno. W. Carter Sons & Co.” . . . “ or the proceeds of the same .if sold,” was a perfectly lawful agreement and gave the plaintiffs an equitable if not a legal lien on the goods. And in case of their sale on the specific proceeds thereof so long as those proceeds remained distinguishable from other funds.
The objections to this conclusion made by the defendants are, that the plaintiffs were pledgees of the goods, and that the effect of the delivery of the subject of the pledge to the owner was that the pledge was discharged. It is further claimed that the words “ under lien ” in the agreement show that the plaintiffs asserted only a lien and not a title in the goods, and intended by the agreement *6 simply to preserve their existing lien as pledgees and not to create by the agreement a new and different lien.
The answer to these objections is twofold: (ist) that the plaintiffs were not mere pledgees, but owners, and that they delivered possession of the goods under a lawful condition, and (2d) that if they had merely the interest of pledgees, the delivery made under the conditions and for the purposes expressed in the agreement, was not such a delivery as would release the pledge. The delivery was to hold for the account and benefit of the plaintiffs till remittance should be made, and not for the benefit of the defendants with power of sale in the meantime.
A pledgee'may make the pledgor his agent to hold or sell the goods for his (the pledgee’s) benefit (Thayer v. Dwight, 104 Mass. 254). Such was the effect of this, agreement if the plaintiffs held only as pledgees.
The criticism on the words “ under lien,” that they mean under the same precise kind of lien under which the goods were before held by the plaintiffs, is, however, in any view that may be taken of the plaintiffs’prior position and interest, an over-nice criticism on the construction of such an instrument, and it seems that these words would rather import that the defendants were to hold the goods subject to a prior claim of the plaintiffs for securing the performance of the agreement of the defendants to remit.
In other words, they mean “ under a liento or in Carter & Co.,” not “ under the existing lien of Carter & Co.,” whatever their interest was before, the intention was that the goods should stand thereafter as their security—or “ under lien ” to them. And if this is their meaning, the court will give effect to the language by declaring such a lien as will be lawful and effectual, rather than one that might be unlawful and nugatory. In the view taken of the case, however, the precise meaning of these words is not material.
The defendant, Baldwin, as assignee of Arguimbau, Wallis & Co., for the benefit of creditors took the prop *7 erty subject to all legal and equitable claims thereon under which the assignors held it. He is a mere trustee for their creditors and not a purchaser for value. The plaintiffs’ rights are unimpaired by the assignment.
So far as the goods remained unsold and so far as their proceeds can be traced in the hands of their assignee, the plaintiffs are entitled to judgment.