CHARLES P. SYLVESTER *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk. January 19, 20, 1914. — February 27, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Evidence,* Declarations of deceased persons. *Agency,* Scope of authority. *Contract,* What constitutes. *Practice, Civil,* Exceptions. *Words,* " First aid."

At the trial of an action by a physician against a railroad corporation for services rendered and expenses incurred in the treatment of one injured by the defendant, it appeared that the plaintiff had rendered first aid to the injured man, and there was evidence tending to show that the plaintiff, after a conversation with and at the suggestion of an employee of the defendant, at whose request on previous occasions he had rendered first aid to injured persons and been paid therefor by the defendant, wrote a letter to a person in charge of the defendant's claim department, inquiring about the defendant's wishes as to the case, that a week later he had another conversation with the same employee, who stated that the claim agent had sent him the plaintiff's letter. It appeared that the employee

had died.  Subject to exceptions by the defendant, the plaintiff was allowed to testify that the employee had said to him that he had "called in response to a request from the" defendant, and that, after a statement by the plaintiff as to the patient's condition and the probable effect of his being moved, the employee had said, "Don't think of it.  The railroad [defendant] will fix you up all right."  *Held,* that the evidence was admissible under R. L. c. 175, § 66, as a declaration of a deceased person, and that it must be inferred that the necessary preliminary findings were made by the judge before it was admitted. *Held, also,* that a finding for the plaintiff was warranted.

At the trial of an action by a physician against a railroad corporation for services rendered and expenses incurred in the treatment of a person injured by the defendant, it appeared that the plaintiff had rendered services beyond those which, under any definition, might be called "first aid," and there was evidence tending to show that the defendant had agreed to compensate him for all the services rendered and expenses incurred.  The defendant asked the judge to rule that "first attendance" meant the initial treatment by the physician, which was at an end when he had done what he considered proper and necessary for the patient's welfare and comfort.  The judge refused so to rule, but instructed the jury in substance that "first aid . . . means such care and treatment as is reasonably necessary to be rendered for the life and physical welfare of an injured person until such time as the injured person can either arrange to care for himself or to be cared for by his friends."  The jury found for the plaintiff in the full amount claimed by him.  *Held,* that the ruling asked for by the defendant should have been given in substance; that the instruction given by the judge was too broad; but that the error did not harm the defendant, because the jury obviously found that the defendant agreed to pay for the services and expenses, irrespective of whether they were first aid.

CONTRACT, with a declaration in three counts, the first count being upon an account annexed containing thirty-four items setting forth medical services and hospital expense incurred in the treatment of one Robert Litchfield at the plaintiff's private hospital at Allerton, a part of Hull, on various dates beginning on August 29 and ending on September 30, 1909, one item of September 30 for "removal to home," and two items on October 3 and 7 of visits to Hingham, the items amounting in all to $392 and interest from November 1, 1909.  The second count alleged in substance that Robert Litchfield was injured by the defendant "so severely that he could not take care of himself," that he was brought by the defendant's employees to a hospital conducted by the plaintiff, that the defendant agreed to pay the plaintiff for the care and treatment of Litchfield, and that, after the plaintiff had furnished such care and treatment, the defendant refused to pay therefor.  The third count, besides the allegations in the second count, alleged that, upon the plaintiff making

demand upon the defendant for the value of the services rendered as set out in the previous counts, "the defendant said to the plaintiff that it did not wish to pay said bill while an action which had been brought against the defendant by said Litchfield for personal injuries was pending and unsettled, but if the plaintiff would let the bill stand until some agreement of settlement or other disposition was made of said action, the defendant would then pay said bill; that the plaintiff thereupon did let said bill stand until just prior to the bringing of this action, when the plaintiff was informed by the defendant that an agreement for the settlement of said action had been made, whereupon the plaintiff again requested payment of said bill; that the defendant then refused and has ever since refused to pay said bill or to pay for the said services rendered at its request." Writ dated October 21, 1912.

In the Superior Court the case was tried before *Hitchcock,* J. The plaintiff testified that Litchfield was sent to his hospital when injured, and that two days thereafter he, the plaintiff, was called upon by one Jeffrey, an employee of the defendant, at whose request on a previous occasion he had rendered first aid to some persons injured by the defendant and had rendered a bill therefor to the defendant, which it had paid. Jeffrey had died before the trial, and the plaintiff was allowed to testify that he had told Jeffrey of the serious injury received by Litchfield, and had "stated to him that of course this was an absolutely different case than ordinary first aid where I was called to a case and had a privilege of leaving it as soon as another physician could be gotten, or as soon as he was so that he could be left; but in this case he was in the hospital and he couldn't be gotten out;" that Jeffrey stated that it did seem an unusual case to him, and "that I had better write to Mr. G. F. Hamlin, claim agent for the railroad."

The plaintiff further testified that, about a week later, Jeffrey called again and, in the course of the conversation, stated that he had with him the letter that the plaintiff had written to the defendant's claim agent; that he told Jeffrey "that it would be at least two or three weeks before the patient could be removed without endangering his life. I said he probably could be moved then without endangering his life but it would prolong his convalescence, perhaps, start the hemorrhage or break up the fracture,

but that if they insisted he could be moved." Subject to an exception by the defendant the plaintiff was allowed to testify that Jeffrey then said, "Don't think of it. The railroad will fix you up all right," and that he stated that he had called in response to a request from the railroad.

Other material evidence is described in the opinion. At the close of the evidence, the defendant asked the judge for rulings that the plaintiff was not entitled to recover either on the first, the second or the third count, and for the following rulings, all of which were refused:

"4. If the jury find that the plaintiff is entitled to recover, they can only assess damages against this defendant for fair and reasonable compensation for first attendance.

"5. 'First attendance' means the initial treatment given the patient by the physicians and when the physician has done what he considers proper and necessary for the plaintiff's welfare and comfort and the initial treatment has, in fact, ceased, the 'first attendance' is at an end."

"8. There is no evidence of any contract made by the defendant to pay the plaintiff's bill, excepting that part which amounts to a fair and reasonable charge for first attendance."

"10. The plaintiff has failed to prove that Mr. Jeffrey had authority to bind the defendant for the plaintiff's bill."

The instructions given to the jury on the subject of "first aid," referred to in the opinion, were as follows: "Now, first aid to the injured is in a sense a comparatively modern term. First aid to the injured, or first assistance to the injured, is a term that has come into prominence somewhat recently, and I do not know that it has been judicially defined. I have not been able thus far to find any judicial definition of it. I can hardly hope to give you a judicial definition that may perhaps be accepted as true, but my understanding of first aid to the injured, or first assistance to the injured, means such care and treatment as is reasonably necessary to be rendered for the life and physical welfare of an injured person until such time as the injured person can either arrange to care for himself or to be cared for by his friends. I give you that definition as an instruction to be borne in mind in considering this case. If the plaintiff was employed by the defendant to render first aid to the injured or first assistance to the injured,

then the extent of his employment would be limited by the definition which I have given you."

The jury found for the plaintiff in the sum of $476.67; and the defendant alleged exceptions.

*Joseph Wentworth,* for the defendant.

*L. A. Mayberry,* for the plaintiff.

SHELDON, J. The evidence of Jeffrey's statements does not appear to have been admitted as the declaration of the alleged agent to show the nature and extent of his authority. That would have been incompetent. *Brigham* v. *Peters,* 1 Gray, 139. *Baker* v. *Gerrish,* 14 Allen, 201. *Stollenwerck* v. *Thacher,* 115 Mass. 224. But the evidence was competent as the declarations of a deceased witness. R. L. c. 175, § 66. We must infer that the necessary preliminary findings were made before the admission of the testimony. *Dickinson* v. *Boston,* 188 Mass. 595, 597. Evidence of his declarations was competent, just as his testimony to the same effect would have been admissible if he had been living.

There was evidence that Jeffrey had requested the plaintiff to continue his care of Litchfield, and had said that the defendant "would fix him up all right." And it could be found on Jeffrey's declaration that the defendant had sent Jeffrey to say this. The weight of the evidence was solely for the jury. *Bourne* v. *Whitman,* 209 Mass. 155, 172. *Pritchard* v. *Old Colony Street Railway,* 216 Mass. 221. *Commonwealth* v. *Holmes,* 119 Mass. 195, 199.

What we have said disposes of all but the third and fifth of the defendant's requests for rulings.

The third request could not have been given. Assuming that there was no evidence to prove the special promise of the defendant alleged to have been made in consideration of the plaintiff's forbearance to press his claim pending Litchfield's action against the defendant, yet the other averments of that count, of which there was evidence, afforded sufficient ground for recovery.

The defendant's fifth request ought to have been given in substance, and the instruction actually given as to "first aid" was too broad. But it sufficiently appears that the defendant was not prejudiced by this error. The plaintiff claimed to recover in all $392, with interest from November 1, 1909. But neither in his declaration nor at the trial did he make any contention that he

could recover the whole amount as for "first aid" given to Litchfield. Even under the broad definition of those words given by the judge, the plaintiff could not upon that ground have had a verdict for the whole of his demand. We scarcely see how any part of the services rendered after September 10 could have been said to be included under the words "first aid." Certainly the items in the plaintiff's account dated October 3 and October 7 could by no possibility have been so included. But the plaintiff had a verdict for $476.67, which is the total amount of his demand with interest to the day of the verdict. This makes it certain that he did not recover merely for the "first aid" given to Litchfield, but upon the ground that he rendered all his services upon the employment of the defendant and its undertaking made through its authorized agent to pay him therefor. We already have seen that such a finding was authorized. Accordingly this exception cannot be maintained. St. 1913, c. 716, § 1.

*Exceptions overruled.*