HENRY BERTHIAUME *vs.* CHARLES W. USEN.

HENRY BERTHIAUME, JR., PRO AMI *vs.* CHARLES W. USEN

York.     Opinion, April 28, 1932.

*Lloyd P. LaFountaine,*
*Hinckley, Hinckley & Shesong,* for plaintiffs.
*Wesley M. Mewer,*
*Hiram Willard,*
*Frederick R. Dyer,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

STURGIS, J.    The plaintiff, Henry Berthiaume, Jr., a minor, re-
ceived injuries in an automobile accident June 16, 1931, which

necessitated the amputation of his right arm. In his action here on review, he charged the defendant with responsibility for what he alleges was the negligence of the driver of the car and was given a verdict in the Trial Court, as was his father, Henry Berthiaume, in a suit to recover disbursements made in his son's behalf. The cases were tried together and come forward on general motions by the defendant for new trials.

In 1930 the defendant, Charles W. Usen, was the proprietor of several amusement enterprises at Old Orchard, Maine, and had in his employ as general mechanic one Joseph Capitelle, who owned a Marmon touring car which he kept in a garage attached or appurtenant to a cottage which he occupied as the defendant's tenant. Two weeks after Labor Day, when the amusement season closed that year, Capitelle locked his car in the garage, took the key to the car and the garage to the defendant's house and left town for the winter. Before he went, the defendant let him have fifty dollars, which, the evidence tends to prove, although by no means conclusively, was a loan. Capitelle says: "I told him (the defendant) if I didn't come back, he could keep the car on this year's (loan)." Whether this alleged statement was made before or after the car was locked in the garage and the keys surrendered does not appear.

Capitelle came back and, when he began work again the last of the following April or the first of May, the defendant turned back to him the keys to the car and garage and he kept them thereafter in his possession. He unlocked the garage and took the car out into the yard, but did not drive it. After two weeks, as he says, upon his statement that he could not repay the money which he had borrowed the fall before, the defendant "told me right off I had no business owning a car and the best thing was to get rid of it; and of course I said, 'Well, I will sell the car, the best thing I can do.' So he told me to go ahead and to take the dealer's plates and put them on the car and I did." He adds, "He told me to go ahead and sell the car, that was all, and get his money out of it and get mine." And states that "He (the defendant) didn't say anything after that."

In accordance with the defendant's suggestion, Capitelle put on dealer's registration plates which belonged to the Scarboro Motor

Mart, a corporation of which the defendant was treasurer, and thereafter drove with them, using the car when and as he pleased, without interference or suggestion from the defendant. He had new gaskets put in and the valves ground at a local garage and bought and installed a new radiator, all upon his own orders and at his own expense. He kept the car nights in front of his home in Saco and daytimes in a parking space. He claims, however, that he demonstrated the car to several persons in an attempt to make a sale, and says that he was demonstrating it to Berthiaume, Jr., as a prospective purchaser when the latter was injured.

Berthiaume, Jr., who, it seems, also worked for the defendant, says that he wanted to buy the car and joins Capitelle in the assertion that the day before the accident they arranged that he should ride home to Saco that night in it for a demonstration. For reasons and under circumstances which do not clearly appear, the two men stayed around Old Orchard until about five o'clock in the morning, when Capitelle found Berthiaume, Jr., asleep in the car, woke him up and started for Saco. Taking a roundabout way, Capitelle drove to Goose Fare bridge, so-called, where the car slewed around, hit the rail, turned over and struck a telephone pole. Berthiaume, Jr., says that, in spite of his request that the car be driven slower, it was traveling a little faster than thirty or thirty-five miles an hour when the accident happened. Capitelle attributes his loss of control of the car to a protruding timber in a depression in the road at the entrance of the bridge and claims that his speed had been reduced. No one else testifies on this point.

It is unnecessary to discuss at length what happened after the accident. A disinterested witness testifies that Capitelle, in a day or two, asserted that he owned the car, took the tires from it and gave the wreckage to a garage man in payment of the towage charges. On the other hand, witnesses whose reliability can not be questioned state that the defendant, upon inquiry after the accident, said he owned the car, a statement which he admits but explains as being made in an attempt to save Capitelle from the consequences of driving unlawfully under dealer's plates. These statements are inconsistent with and serve to weaken the testimony which the same

parties gave on the stand, but otherwise are of little probative value. The essential and controlling facts are found elsewhere.

We are convinced that the verdicts below were manifestly wrong. Assuming, without deciding, that Berthiaume, Jr., was himself in the exercise of due care when he was injured and Capitelle was guilty of negligence as alleged, on the record, the defendant had no title or property in the car nor responsibility for its operation at the time of the accident.

The plaintiffs contend that Capitelle pledged his car to the defendant in the fall of 1930 and regained possession of it the following spring as agent of the pledgee and solely for the purpose of sale for the latter's benefit, and invoke the familiar rule that a pledgee, without losing his lien, may return the pledged property to the pledgor as a special agent to sell it and pay the debt secured. *Robinson* v. *Larrabee*, 63 Me., 116; *Spaulding* v. *Adams*, 32 Me., 211; *Thayer* v. *Dwight*, 104 Mass., 254; *Kellogg* v. *Tompson*, 142 Mass., 76; Jones on Pledges, Sec. 43; Story on Bailments, Sec. 297. The evidence does not support this contention nor require the application of the rule.

If there was a pledge, it lies in the statement of Capitelle that, after borrowing fifty dollars from the defendant in the fall of 1930, he locked his car in the defendant's garage, handed over the keys and "I told him, if I didn't come back, he could keep the car on this year's (loan)." He did come back, the keys were returned to him and, so far as the evidence discloses, he immediately resumed complete and exclusive possession of the car. If we construe Capitelle's statement, if it was made, as a conditional agreement for a pledge of the car, if and when he failed to "come back," there never was any pledge. If we view it as a present contract of pledge subject to termination on his return, the lien of the pledge was extinguished when the condition was performed.

Nor is there evidence which will justify a finding that the automobile again came into either the actual or constructive possession of the defendant, as a pledge or otherwise. Capitelle retained the key to it, as also to the garage in which it was kept. After two weeks, as has been seen, he removed it from the garage, kept it at Saco and in parking places and dealt with it in all respects as his

own property. We can discover no ground upon which it can be held that, if there was a pledge, having been once extinguished, it was thereafter revived.

It necessarily follows that when Capitelle says the defendant advised him to sell the car and he agreed to do so and get their money out of it, the defendant had neither property in nor possession of the car and no power to dictate as to its disposal. It was Capitelle's car and his promise to sell it was a mere *nudum pactum*. His use of the car thereafter, as it had been since his return that spring, was as its owner, not as an agent of the defendant.

It is unnecessary to discuss other issues raised by pleading and proof. The plaintiff's failure to establish that Capitelle was the defendant's agent, bars their recovery in these actions on this record. New trials must be granted and the entry in each case is,

*Motion granted.*
*New trial ordered.*