## Joshua J. Cooper

*v.*

## Samuel E. Ray.

47   53
185  430

1. PLEDGE—*to render a pledge valid, delivery of possession is essential.* To render a pledge valid as a security, there must be a delivery of the property to the pledgee, and the loss or delivery back of the possession, with the consent of the pledgee, terminates his title.

2. SAME—*a delivery back for a temporary use—will not invalidate pledgee's title.* But if the possession is delivered back to the pledgor, for a temporary purpose only, and it is agreed to be re-delivered to the pledgee, if the pledgor refuses to restore it after the purpose is accomplished, the pledgee may recover as against him.

3. SAME—*effect of a new lien created—after the return of the property to the pledgee.* Where a pledgee of property, delivered back the possession to the owner for a temporary purpose only, and after the accomplishment of such purpose, the property was returned to him, and the pledgor subsequently, and while

the property was in the possession of the pledgee, mortgaged it to a third person; Held, that the mortgage lien thus acquired was subordinate to the title of the pledgee.

4. And in such case, the party having the mortgage lien would have no right to take possession of the property, as against the pledgee, without first paying, or tendering to him the amount of his debt.

APPEAL from the Circuit Court of Coles county ; the Hon. JAMES STEELE, Judge, presiding.

The opinion states the case.

Mr. O. B. FICKLIN, for the appellant.

Mr. JOHN SCHOLFIELD, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of replevin, brought by Joshua J. Cooper, in the Coles Circuit Court, against Samuel E. Ray, for the recovery of an omnibus. The declaration was in the usual form. Defendant filed a plea of *non detinet*, and a plea of property in himself, also pleas averring a several owner- ship in three other persons. Replications were filed to the several pleas, and issues formed. A jury was waived by consent, and a trial was had by the court. The issues were found for the defendant, and a judgment of *retorno habendo* was rendered in his favor, from which this appeal is prosecuted.

It appears from the evidence, that James W. Cooper and Josiah F. Cooper, in June, 1865, purchased the omnibus in dispute, from Daniel Sinnbelt, of Decatur, for the sum of three hundred dollars. They borrowed of one Stoner one hundred and fifty dollars, to pay on the purchase, and gave to him a mortgage on the property to secure its payment. This debt and mortgage matured on the 4th of March, 1866. When the mortgage fell due, they, without the knowledge of appellant,

agreed to sell Stoner two of his horses, which were then used in running the omnibus, to satisfy the mortgage. The horses were to be delivered on the first of the following September; but when they came to deliver the horses, appellant objected, unless they would secure him for the price of the horses. It was then agreed that he should hold the omnibus to secure the payment of the price of the horses and twenty-five dollars advanced by appellant, to pay the freight on the omnibus, making in all the sum of one hundred and seventy-five dollars, and it was delivered to appellant at the time the arrangement was made.

That James and Joshua Cooper were indebted to appellee in the sum of sixty-six dollars, and to secure him they gave a chattel mortgage on the vehicle, on the 22d day of November, 1866 ; but they at the time failed to notify him, that it was pledged to appellant; that after it was pledged, James Cooper, in September, 1866, run it four days at the Charleston fair, and in the latter part of October, 1866, about the same length of time, at the fair at Mattoon ; that, on each of these occasions, it was used with the consent of appellant. About the 22d of December following, James called upon Ray to learn about the payment of his debt, then about falling due, when the latter said it was immaterial, as he expected that he would want the omnibus in a short time, and if so, would want to buy it; and said if he should not want to purchase it, they could pay the money after the mortgage became due. Two days after the maturity of the mortgage, James saw appellee, and he refused to purchase the omnibus; in the meantime he had taken possession of it, without the consent of the mortgagors; that on the 30th of January, 1867, James tendered to appellee the money due on the mortgage, with interest, which he refused to receive, and refused to give up the omnibus. It appears that appellant's debt was never paid, but remained due in full. It also appears that appellee's mortgage was not recorded until some eleven days after its

maturity, although the recorder states that it had been filed a month before, for record, and singularly, and in violation of his duty, he seems to have permitted it to be withdrawn without being spread upon the records of his office.

It also appears that appellant hired the omnibus a few days, on two different occasions, to other persons than to his sons, who had placed it in pledge. It is true, there is some evidence that slightly conflicts with this statement in some particulars, but we regard the evidence, when all considered together, as establishing this state of facts.

The single question presented by this record is, whether appellant, by permitting the pledgors of the property to have the temporary use of it, lost the lien created by the pledge. When the property was pawned, the requisite possession was given to the pledgee, and, his rights then became vested, and binding between the parties, and, so far as this record discloses, as to all other persons. Appellee then had no claim, but subsequently acquired his mortgage, which was no doubt subject to the pledge, unless the temporary use of the property, by one of the pledgors, previous to that time, and returned to the custody of the pledgee, had destroyed the lien under the contract by which it was pledged to appellant.

While the delivery of possession is essential to complete the title by pledge, so by the common law, the loss or delivery back of the possession, with the consent of the pledgee, terminates his title; nevertheless, if the thing is delivered back to the owner for a temporary purpose only, and it is agreed to be re-delivered by him, the pledgee may recover it against the owner, if he refuses to restore it, after the purpose is accomplished. Story on Bailm., 303, Sec. 299. It thus appears that appellant lost none of his rights by the temporary loan of the pledge to one of the pledgors, as against them, whatever might have been the effect of a new pledge, sale, or other lien, created before its return to appellant, and while in the possession of one of the pledgors. We have seen that the loan

was lawful, and the return of the possession was rightful, and restored appellant to the title he acquired by the original pledge. Appellee acquired no lien while it was temporarily in the hands of the pledgors, and not until some time subsequently, and when he took his mortgage the property was in the possession of appellant, under and by virtue of the pledge. Appellee, therefore, acquired a lien by his mortgage, subordinate to the title of appellant.

The pledgors had not lost their title by creating the pledge. They could still redeem, sell or incumber it, subject to the existing incumbrance created by the pledge; and when appellee took the mortgage, he acquired the right to remove the incumbrance from the property, and foreclose his mortgage, by reducing it to possession after a default in the payment. But such a default gave him no right to take possession of the property as against appellant, without first paying or tendering to him the amount of his debt.

Had it appeared from the evidence, that appellant had never taken possession, or had parted with it, without any intention or agreement to restore it, within a short period of time, then the rights of appellant would have been lost, unless the pledgors had seen proper voluntarily to restore the property to his possession. But even, in such a case, we are not prepared to say, that if he had acquired possession, and appellee's mortgage had been subsequently acquired, his rights would have been different. He was not misled by possession of the pledgors, when they executed the mortgage. The property was then in possession of appellant, and appellee should have made inquiry, but in any event, he is bound by the notice which appellant's possession gave to the world, of his claim. Appellant lost no rights by hiring or loaning the property to other persons than the pledgors.

For these reasons the judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*