M. McKENDREE TOOKE *et ux.*

*v.*

BENJAMIN NEWMAN *et al.*

75    215
185    428
86a   141
75    215
113a  ³351

1. USURY — *in equity party seeking relief from must offer to pay debt and legal interest.* Where a person applies to equity for relief against usurious contracts, he must tender or offer to pay the principal and the legal rate of interest, or the court will not take jurisdiction.

2. PROMISSORY NOTE — *debt presumed to be due payee.* Where a promissory note is made payable to a married woman, it will be presumed, until rebutted, that the money is due to her and not to her husband, and the fact that the money for which the note was given, was loaned by the husband, will not rebut such presumption.

3. SAME — *holder of, as collateral, may collect whole sum due, without regard to his debt.* Where a person holds a promissory note as collateral security for a smaller debt due him from the pledgor, he may collect the entire sum due thereon, even though it is in excess of his demand. It matters not to the maker what the holder paid for his note, or how the pledgor and pledgee shall afterward settle.

4. DEED OF TRUST — *insolvency of trustee no ground for restraining a sale by.* A bill to restrain the sale of property under a deed of trust, among other reasons alleged that the trustee was insolvent, but failed to show that he became so after he was appointed, or that there was danger he would misapply the moneys arising from the sale: *Held,* that this afforded no ground for the relief sought.

5. SAME — *notice of sale, construed in respect to the notes for which the sale would be made.* Where a notice of sale under a deed of trust described three notes secured, and recited that the trustee had been called upon to sell to pay two of them, it was *held* that no inference could be had from the notice that the trustee intended selling for all of the notes. One of them not being due, it would be presumed he intended to do his duty and not violate it.

6. SAME — *notice giving longer time than required.* Where a deed of trust required in case of sale a prior notice of five consecutive days, the last of which should be ten days before that fixed for the sale : *Held,* that making the last insertion a few days more .than that required, could not invalidate the notice. Making it less would not be sufficient, as it would lessen the chances of securing bidders.

7. SAME — *giving notes and security for usury as ground for restraining sale.* The fact that the creditor holds the debtor's notes given for usurious interest, will not in any manner impair the power or duty of the trustee to make sale of the property conveyed to him, and apply the proceeds in discharge of the debt secured by the trust deed. If he should attempt to misapply the proceeds and pay the notes given for usury, the court would then, and not before, interfere.

APPEAL from the Superior Court of Cook county ; the Hon. S. M. MOORE, Judge, presiding.

This was a bill in chancery, filed by M. McKendree Tooke, and Lucenia P. Tooke, his wife, against Benjamin Newman, Caroline Newman, his wife, and John Ling, to enjoin a sale of real estate under a trust deed made by complainants to Ling, as trustee, to secure notes held by Newman or his wife. The material facts of the case are stated in the opinion of the court.

Messrs. SCOVILLE & BAILEY, for the appellants.

Messrs. TRUMBULL, CHURCH & TRUMBULL, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court :

This was a bill in chancery to enjoin the sale of a lot of land by a trustee to pay certain promissory notes given by complainants to the Newmans. The bill alleges that on the 7th day of June, 1873, complainants executed a deed of trust to secure the payment of three promissory notes — one for $6,000, one for $3,333.33, and one for $389. It is further alleged that Newman, the husband, loaned the money to complainants for which the first note was given, but that he had them made payable to his wife ; that the trust property belonged to Mrs. Tooke when the money was borrowed; that Newman purchased the $3,333.33 note of one Daniels, or held it as collateral security for about $400 loaned Daniels ; that Newman had agreed in writing that if complainant would pay him one-half of the amount of the $3,333.33 note, he would extend the time for its payment one

year, which time had not elapsed, and that there was usury in the transaction, Newman having exacted for one extension of the time of payment, three per cent a month, and for another, nine per cent a month; that they feared, from the form of the notice, the trustee intended to sell for the payment of all the notes, that not due, as well as those that were; that the notice of sale was iusufficient, under the terms of the deed of trust; that they had offered to pay to Newman what was due on the notes; the acknowledgment of the deed of trust was defective; and that the trustee was insolvent. The bill prayed an account and an injunction. To this bill a demurrer was filed and sustained by the court, and the bill was dismissed, and from that decision this appeal is prosecuted.

Taking all of the allegations of the bill to be true, as admitted by the demurrer, still there can be no question that there was near $5,000 due to Mrs. Newman for principal, and six per cent interest on the $6,000 note.

The rule is familiar to the profession, that when a person applies to equity for relief against usurious contracts, the court will only entertain jurisdiction on the condition that the debtor shall pay the principal, with legal, but not with conventional, interest. Six per cent being legal interest, the court would require the payment of the principal with that rate of interest, as a condition to granting relief. And in such cases the debtor must tender, or at least offer to pay, the principal and such interest to the creditor or holder of the instrument. In this case, the note was payable to Mrs. Newman, which, until rebutted, raises the presumption that the money was due to her. Nor does the fact that the money was loaned by her husband rebut that presumption. The bill should, therefore, show a tender of the money due on the $6,000 note, or an offer to pay it to her. This was not done. As to this it required no account between the parties to determine the amount due on that note.

It is also urged, for a reversal, that Newman had no right tc

28—75th Ill.

recover more on the Daniels note than the $400, with interest, which Newman had loaned him, and to secure which that note was pledged. It is also alleged that Daniels had abandoned all right to that note to Newman, and the notice recites that he held it by indorsement. If this be true, no reason is perceived why he should not collect it according to its terms, unless prevented by the agreement set forth in the bill. The mere fact that he holds it as collateral security would not prevent him from collecting the entire note. If M. M. Tooke owes the money, it is no concern of his how Newman and Daniels may settle when the amount is paid; nor does it matter to him what sum Newman paid for the note. Whatever sum was discounted inured to Newman's benefit. Whether he paid $400, or less, for the note would give to Tooke no defense. This proposition is so elementary that we had not expected to be called upon to decide it, and so of the question whether Newman, even if he held the note as security, would have the right to collect the sum due upon it, unless restrained by agreement between the pledgor and pledgee.

It is urged that the trustee was insolvent, and, therefore, should have been restrained from selling the property. It is not suggested in the bill that he has become so since he was appointed, or, even if he had, that there is the slightest danger that he would misapply the money arising from the sale. Insolvency, or the want of large capital, by no means implies a want of integrity or business capacity. He may have these in the highest degree, and yet be poor. But it is urged that he is intending to sell property, contrary to the contract for further time on the $3,333.33, and apply the proceeds for its payment before it was due, and that if he did so he was irresponsible, and there would be danger of loss to complainants, which would be a fraud upon them.

We perceive no language in the notice from which it can be inferred that the trustee intends to sell any more than would pay the $6,000 and $389 notes. He says the holder of these had

demanded the sale of the property for their payment. No reasonable or fair construction of the language can torture it into an intention to sell for the payment of the $3,333.33. Nor can we presume a trustee intends to violate his trust. And, in this case, to presume such to be the fact, we should have to base it upon some suspicion outside of the notice and the bill. He naturally and properly described the indebtedness secured by the deed of trust, but says that he had been called upon to sell to pay the first and last of the notes. This being true, we would not expect him to sell for the payment of a note not then due. The presumption would be that he would do his duty, and not that he would violate it. Nor is there any pretense that complainants had seen the trustee to learn what he understood to be his duty in the premises. And it may, for aught we can see, be for the reason that this ground could not have been set up and relied upon for an injunction.

The claim that the notice is insufficient is extremely technical, and without force or merit. The deed of trust required that there should be published a notice of sale for five consecutive days, the last of which should be ten days before the sale. The last notice was on the eleventh day before that fixed for the sale. The deed does not state the last insertion of the notice shall be ten days, and no more, before the sale. Had there been but nine days, then it would have been insufficient, because the longer the notice, within reasonable limits, the greater the number of persons who will see it, and the larger the chances for an enhanced price that may be had for the property. Hence the law gives to the debtor the full benefit of the stipulated notice, and prevents the creditor from abridging the time and thus injuring his debtor. But a longer notice than is required, by a few days, can work no injury, but is calculated to operate to his benefit.

It is urged that Newman, after the maturity of the first and last notes, for the extension of the time for payment, procured the execution of several large notes for usurious interest,

amounting to some $4,000 or more, by complainants. And as security for their payment had procured of them a note for $9,000, due the 20th of March, 1877, with four coupon notes for interest, amounting to $2,700, secured by a deed of trust on real estate. It is only stated in the bill that these notes and deed of trust were transferred by complainants to Newman as security for the notes given for the usury extorted. There is no pretense that the trustee intends to sell the land for the satisfaction of these notes, held as additional security for the principal debt. The fact that Newman holds such notes in nowise impairs the power or duty of the trustee to make sale and apply the proceeds in discharge of the debt secured by the deed of trust. If he should attempt to misapply the fund and pay the notes given for usury, then, and not till then, will the court interfere to relieve against the misappropriation of the trust fund. The transactions relate to different notes and securities, and being disconnected, their existence in nowise affects Newman's right to have the trust property sold and applied to the payment of the debt which it was intended to secure. We cannot presume the trustee will misapply the trust fund; and until it shall become apparent that he will, he must be left free to execute the trust he has assumed.

We perceive no error in the record, and the decree must be affirmed.

*Decree affirmed.*