## Case No. 4,837.

Ex parte FITZ.

In re RAWSON et al.

[2 Lowell, 519.][1]

District Court, D. Massachusetts. Nov., 1876.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

R. D. Smith, for petitioner.

T. F. Nutter, for assignee.

LOWELL, District Judge. The petitioner lent money to Rawson & Hittinger, and took from them at the same time the notes of Jacob Hittinger, not a member of the firm, and bills of sale of certain locomotive engines, then in their machine-shop in Cambridgeport, as additional security. Rawson & Hittinger have become bankrupt, and Jacob Hittinger has paid the debt; and the petitioner, acting as trustee for him, asks that the engines or their proceeds be now applied to pay the debt. Jacob Hittinger has become a party to the petition, and submits his rights to the determination of the court.

It was argued in behalf of the petitioner that the bills of sale were mortgages, and that the failure to record them would not, under the circumstances of the case, be fatal to the title of the mortgagee. I take it, however, to be clear, that, by the law of Massachusetts, as of the other states, the bill of sale, intended for security, operated as a pledge and not as a mortgage, and neither required nor admitted of registration: Walker v. Staples, 5 Allen, 34; Kimball v. Hildreth, 8 Allen, 167; and, incidentally, Newton v. Fay, 10 Allen, 505; Drake v. White, 117 Mass. 10. As a general rule, the pledgee must take and keep possession of the chattels, or his title will not be valid against the assignee in bankruptcy. My decision, that a mortgagee had a better title than the assignee in some cases, though he neither took possession nor recorded his mortgage, does not apply to pledges, but turned on the words of a statute, construed with the aid of the rule of the common law of Massachusetts, that the possession of a mortgagor is consistent with the title of the mortgagee. Still, on the question of what is a sufficient taking and keeping, the cases arising under mortgages are in point.

I understand the law to be that there must be a delivery before the pledgee's lien will attach; but the delivery may be either actual or constructive: Meyerstein v. Barber, L. R. 2 C. P. 38; Id. 661; 4 H. L. 317; Young v. Lambert, L. R. 3 P. C. 142. Then, as to keeping possession, it may be kept by an agent, and that agent may be the pledgor. If the circumstances make out a good reason for giving the custody and apparent control to the pledgor, there may not even be evidence of fraud; but, at most, his possession will only be evidence either that the pledge has been abandoned, or that the transaction is covinous. See Sumner v. Hamlet, 12 Pick. 76; Macomber v. Parker, 14 Pick. 497; Hays v. Riddle, 1 Sandf. 248; Way v. Davidson, 12 Gray, 465; Cooper v. Ray, 47 Ill. 53; Martin v. Reid, 11 C. B. (N. S.) 730; Thayer v. Dwight, 104 Mass. 254; Thorn-

dike v. Bath, 114 Mass, 116; Weld v. Cutler, 2 Gray, 195.

On the question of fact, whether possession was taken and kept, there is, unfortunately, a direct contradiction between the only two witnesses to the acts done. The petitioner testifies that, soon after the bills of sale were given, he went to the shop of the pledgors, and in presence of one of them, Michael Hittinger, took possession of every one of the engines, put his hand upon each, and told Michael Hittinger to hold them as his agent, and that if any of them were sold he would give an order for the delivery. Michael Hittinger says that the petitioner came over to the shop, and one engine was pointed out to him, but he did nothing about taking possession, and gave no orders. Supposing, as I do, that the witnesses are equally veracious, I feel bound to give greater credit to the evidence of the petitioner; because he cannot be mistaken, and Mr. Hittinger may have forgotten the circumstances. The petitioner went to the factory, according to his story, with a definite purpose, and must recollect what it was, and what he did in pursuance of it. Both stand before the court unimpeached, and with no serious bias, because the debt has been paid to Mr. Fitz, and he is proceeding for the benefit of a surety; and Mr. Hittinger, on his part, has assigned all his title by his petition and the proceedings in bankruptcy. I can only regret that the parties did not see fit to submit the decision of this question to a jury.

Taking it, as I feel bound to do, that Mr. Fitz's recollection is the more accurate, it seems to me, as matter of law, that his possession was sufficient. I do not consider that a pledgee is bound to remove locomotive engines, and put them into his house or into a warehouse. He might well leave them with the pledgor, to be finished, or even to be sold. There is somewhat more danger of fraud if the pledgor himself is intrusted with the possession, than if a third person was employed; but there is no difference in principle between the appointment of Hittinger and of one of his clerks. It comes back to a question of fraud or good faith. Of course, it is well understood that an assignee in bankruptcy is not a purchaser without notice.

It is argued that there was no sufficient designation of the particular engines pledged. I do not understand the evidence to be undisputed on this point. Mr. Fitz said that the engines mentioned in his bill of sale could be easily picked out from the others; and Mr. Hittinger again differed from him on this point. But this matter is set at rest by the evidence, which I have accepted as accurate, that each engine was in fact designated and pointed out when Mr. Fitz went over to the shop and took possession, which was long before the bankruptcy.

Petition granted.