## THE RICE & BULLEN MALTING COMPANY

*v.*

## THE INTERNATIONAL BANK.

*Opinion filed April 17, 1900.*

1. BAILMENTS—*when delivery of warehouse receipt by pledgee does not affect his right to proceeds of sale.* The delivery of a warehouse receipt by the pledgee to the pledgor, to enable the latter to carry out a contract of sale as the pledgee's agent, does not affect his right to the proceeds of the sale as between the parties or as against the purchaser, where the latter was notified of the pledgee's rights before making payment.

2. EVIDENCE—*when fact of agency may be proved by conversations.* If the rights of the purchaser of goods are not injuriously affected by want of notice that the seller was acting as agent for another party who is suing for the purchase money, the fact of such agency may be shown by conversations between the principal and agent not in the presence of the purchaser.

3. INSTRUCTIONS—*when omission of element of time of giving notice is harmless.* Where the purchaser of goods admits having received notice of plaintiff's ownership before making payment to a third party, the fact that an instruction authorizing a recovery if notice was given fails to require the receipt of such notice before payment is not ground for reversal.

4. PAYMENT—*purchaser's contract to make payment to certain party does not excuse his disregard of notice.* That the purchaser of a quantity of malt had contracted with the seller to make payment to a third party, does not authorize him to make full payment to such party after receiving notice that the purchase price of part of the malt should be paid to another party, who, as pledgee, had authorized the sale under an agreement to receive the proceeds.

*Rice & Bullen Malting Co.* v. *Int. Bank,* 86 Ill. App. 136, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

FLOWER, SMITH & MUSGRAVE, for appellant:

Conversations between a principal and agent, not brought to the knowledge or attention of a party to a suit, are incompetent, and it is error to permit them to be

proven. *Adams Express Co.* v. *Boskowitz,* 107 Ill. 660; *Cottom* v. *Holliday,* 59 id. 176; *Boeker* v. *Hess,* 34 Ill. App. 332.

Where a person entrusted with goods as agent sells them to one who has no knowledge that he is agent, but is led to believe, from the manner that he has been allowed to deal with the goods, that they are his, the principal is bound by the contract made and by the equities of the purchaser. Mechem on Agency, secs. 279, 283, 284, 362, 709; Story on Agency, secs. 390, 444; 1 Am. & Eng. Ency. of Law, p. 410, note 2; *Koch* v. *Willi,* 63 Ill. 144; *Connelly* v. *McConnell,* 39 Atl. Rep. 773.

Where one person, for a consideration paid by another, agrees to pay a third person, the contract is binding, is not within the Statute of Frauds, and may be sued on directly by a third person. *Brown* v. *Strait,* 19 Ill. 88; *Insurance Co.* v. *Olcott,* 97 id. 439; *Walden* v. *Karr,* 88 id. 49.

A person has a right to determine with whom he will contract, and cannot have another thrust upon him. *Boston Ice Co.* v. *Potter,* 123 Mass. 28; *Connelly* v. *McConnell,* 39 Atl. Rep. 773.

Conveyances having the effect of a mortgage or lien upon personal property are invalid as to third persons, unless possession thereof be delivered to and remain with the grantee. Hurd's Stat. chap. 95, sec. 1; *Porter* v. *Dement,* 35 Ill. 478; *Frank* v. *Miner,* 50 id. 444.

A written pledge of personal property does not convey the legal title. It only creates a lien, which is terminated by a voluntary surrender of the property. Jones on Pledges, secs. 40, 47; *Union Trust Co.* v. *Rigdon,* 93 Ill. 458; *Cooper* v. *Ray,* 47 id. 53; *Way* v. *Davidson,* 12 Gray, 465; *Bodenheimer* v. *Newsom,* 69 Am. Dec. 775.

MORAN, MAYER & MEYER, for appellee:

The purchaser of property from an agent, who is notified before payment therefor that such person is only agent for a principal and that payment should be made to such principal, is liable to the latter. *Kelly* v. *Munson,*

7 Mass. 319; *Traube* v. *Milliken,* 2 Am. Rep. 14; *Mudge* v. *Oliver,* 1 Allen, 74.

The delivery of the warehouse receipt to appellee was a symbolic delivery of the property therein mentioned, and had the same effect as a delivery of the property itself. *Burton* v. *Curyea,* 40 Ill. 320; *Railroad Co.* v. *Kerr,* 49 id. 458; *Railroad Co.* v. *Phillips,* 60 id. 198; *Railroad Co.* v. *Wagner,* 65 id. 198; *Peters* v. *Elliott,* 78 id. 327; *Northrop* v. *Bank,* 27 Ill. App. 527; *Hanchett* v. *Buckley,* 27 id. 164; *Dock Co.* v. *Foster,* 48 Ill. 507; Jones on Pledges, sec. 280.

No complaint can be made of the failure of the jury to answer certain of the questions submitted, because no motion was made by appellant to send the jury back for the purpose of answering the questions. *Railway Co.* v. *Raymond,* 148 Ill. 251; *Railroad Co.* v. *Dorman,* 72 id. 505.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

In 1893 J. H. Pank & Co. were carrying on the business of making and selling malt, and had a malthouse and warehouse in Chicago. They executed two notes on October 21 and November 1 of that year, payable to their own order, and endorsed them and raised money on them. Among other collaterals to the notes they endorsed and delivered a warehouse receipt of the National Storage Company for six thousand bushels of malt stored in bin No. 1 at warehouse A, being the warehouse of Pank & Co. The National Storage Company measured the grain into the bin, put a seal over the mouth of the chute and a sign on the bin that it was leased to and property in the possession of the National Storage Company, as warehousemen. The malt and bin remained in exclusive possession of the storage company. The notes were purchased by appellee, the International Bank, in February, 1894, and the warehouse receipt was attached to one of the notes. J. H. Pank & Co. had also given to the Fort Dearborn

National Bank their promissory note for money borrowed, and as collateral thereto gave their own receipt for thirty thousand bushels of malt in store in their warehouses, subject to the order of said Fort Dearborn National Bank, which locked up the bins containing the malt pledged to it. J. H. Pank & Co. failed, and made an assignment to Carl C. Moeller. The appellant, the Rice & Bullen Malting Company, was engaged in the business of a maltster in Chicago, and its president, Patrick H. Rice, was a director of the Fort Dearborn National Bank. J. H. Pank, a member of the firm of J. H. Pank & Co., was directed by the Fort Dearborn National Bank to appellant as a probable purchaser of the malt pledged to said bank, and on April 6, 1894, he made an agreement to sell complainant twenty-five thousand bushels of malt at fifty-one cents per bushel. This purchase was made or induced, in part at least, from a motive on the part of Rice to aid the Fort Dearborn National Bank in realizing upon its said collateral. Nothing was said at the time of making the contract for the sale about appellee having any interest in the malt or anything to do with the sale. Pank went to appellee to obtain authority to sell the malt pledged to that bank by the warehouse receipt, and told the assistant cashier that he had made a sale of the malt to appellant at fifty-one cents a bushel. That officer told him that as there had been an assignment and the assignee had an equitable claim on the malt, he should get authority from such assignee, and he then brought the following order:

"CARL C. MOELLER & Co., GENERAL COMMISSION MERCHANTS, }
234 LASALLE STREET, CHICAGO, *May 4, 1894.* }

"*B. Neu, Cashier Int. Bk.:*

"DEAR SIR—Please credit enclosed note for $855.52, less discount on note for $7800. Also deliver to Mr. J. H. Pank the National Storage Co. receipt for bin No. 1, 6000, for delivery on sale to Messrs. Rice & Bullen. I will hold myself responsible for the full amount due you. "Yours truly,

CARL C. MOELLER, *Assignee.*"

It was then agreed that he should deliver the malt as agent for the appellee, which should receive the proceeds, and the warehouse receipt was delivered to him for that purpose. He first delivered to appellant the malt which he had pledged to the Fort Dearborn National Bank, amounting to about twelve thousand bushels. By means of the warehouse receipt he obtained from the storage company the malt for which it was given. The storage company broke the seal and delivered the malt in the same condition as when sealed up, and Pank delivered it to appellant. It amounted to 5818$\frac{32}{34}$ bushels, and he then delivered some other malt not involved in this case to complete the transaction. Appellee's malt was delivered f. o. b. cars at warehouse, and Pank sent the bills to appellant, on which was endorsed that they were payable to appellee. Appellant was also otherwise fully informed, before payment, that this malt belonged to appellee, and was notified to make payment to it. Appellant refused to make such payment, and paid the Fort Dearborn National Bank not only for the malt upon which that bank had a claim, but also for that pledged to appellee. Thereupon appellee brought this suit against appellant declaring in the common counts, and appellant pleaded the general issue. There was a trial, when the jury returned a verdict for the plaintiff, assessing its damages at $3646.67,—the purchase price of the malt represented by the warehouse receipt, with interest from the time of delivery. The jury also found, in answer to special interrogatories, that at the time of making the sale of the malt nothing was said about malt of the plaintiff or malt belonging to the plaintiff; that at the time of the delivery of the warehouse receipt to Pank, plaintiff knew that Pank had made a sale of the malt, and that such delivery was made for the purpose of having Pank deliver the malt called for by the receipt to the defendant, pursuant to the contract for the sale of the same.

The defense made at the trial was that defendant pur-
chased the malt represented by the warehouse receipt
with the understanding that it was to be paid for to the
Fort Dearborn National Bank, and that it had paid said
bank for the same. There was a direct contradiction be-
tween witnesses on the question whether the defendant
was informed, before the delivery of the malt, that it
belonged to the plaintiff, but there was no dispute that
it was notified of plaintiff's rights and of all the facts
before payment was made.

Plaintiff was permitted, against objection, to prove
the agency of Pank for it in the transaction, and its
assistant cashier was allowed to state the conversation
between himself and Pank, to the effect that upon get-
ting authority from the assignee the malt would be de-
livered to be sold to the defendant for plaintiff and the
proceeds to be delivered to the plaintiff. It is argued
that this ruling was error, and that conversations be-
tween the plaintiff and Pank, not in the presence of the
defendant or brought to its knowledge, were incompe-
tent. The plaintiff affirmed the relation of principal and
agent between it and Pank, and the burden was upon it
to make proof of such agency. The agency could be cre-
ated verbally, as it was in fact created by the agreement
between plaintiff and Pank, and there was no error in
permitting plaintiff to make the required proof. It is not
essential that an agency should be created in the pres-.
ence of each party with whom the agent deals on behalf
of his principal, nor that the agency should be made
known to a party whose rights are not injuriously af-
fected by the want of such notice. There may be ques-
tions as to the rights and liabilities of parties arising
out of notice or want of notice of an agency, but no such
question arises here. There was no dispute about any
right which the defendant had as against Pank, and the
only question was whom he was acting for. Plaintiff was

seeking the benefit of his dealings made as its agent and on its behalf, and it was proper to prove the agency.

Upon the cross-examination of the assistant cashier the defendant inquired what had become of the other collateral held by the bank with the notes. The court sustained an objection to that inquiry, and it is contended that defendant had a right to go into all the dealings between Pank & Co. and plaintiff to show how much, if anything, was due on the notes. The witness stated that the notes had not been paid, and there was evidence that a balance of $2704.01 was due upon them. The notes not being paid, it did not concern defendant how much was due. The defendant claimed no rights or equities against Pank or Pank & Co., and had no right to enter upon such an investigation. Plaintiff had a right to collect the collaterals that it might be ready to account for them, and if there was any balance, to pay it over to Pank & Co. It could make no difference to defendant how plaintiff and Pank & Co. should afterward settle, as defendant's rights could not be thereby affected. *Tooke* v. *Newman*, 75 Ill. 215.

The defendant asked an instruction requiring the jury to return a verdict in its favor, but the court refused to grant it. The evidence on the part of plaintiff established a good cause of action, and the instruction was properly refused.

Complaint is made of instruction No. 6 given to the jury at the request of plaintiff. It is as follows:

"The court instructs the jury, that if you find, from the evidence, that the International Bank, through its duly authorized officers or agents, or any one of them, directed J. H. Pank to sell the malt in question for it, and that said J. H. Pank, acting for and on behalf of said International Bank, did sell and deliver such malt to the defendant, Rice & Bullen Malting Company, at an agreed price of fifty-one cents per bushel, and if you further believe, from the evidence, that said malt belonged

to the plaintiff and that defendant was so notified, and that said defendant has not paid to the plaintiff, the International Bank, the price agreed to be paid for such malt, then it is your duty to find a verdict for the plaintiff for the amount of such sale, together with interest on said sum at the rate of five per cent per annum from the date of the delivery of said malt to the present time."

The main objection argued is, that the jury were told it would be their duty to find for the plaintiff if the defendant was notified that the malt belonged to the plaintiff, without regard to the time of notice, and even though the notice might have been after it had paid the Fort Dearborn National Bank. This would have been a fatal objection if it had not been confessed by defendant that it had notice before such payment. It was conceded that the notice was received, and before payment, and the jury could not have found that the notification came after payment. The omission of that qualification as to time in the hypothesis could not affect the defendant.

Defendant asked the court to give an instruction marked 5*b*, stating, in substance, that by the surrender of the warehouse receipt to Pank the plaintiff lost its lien, by virtue of said receipt, upon the malt therein mentioned, and that if the malt was sold and delivered by Pank without any agreement on the part of the defendant to pay the plaintiff therefor, and without any knowledge of any claim by the plaintiff in or to said malt at the time the defendant received the same, then the jury should find the issues in favor of the defendant. The court qualified the instruction so as to say that plaintiff lost said lien as against defendant, and that if the defendant was without knowledge of the claim of the plaintiff at the time defendant received or paid for the malt, the jury should find for the defendant. The modification is complained of. The instruction was not the law of the case, either as asked or given. It should have been refused as an attempt to misapply a rule of law. There

was no question in the case of the rights of a *bona fide* purchaser from Pank supposing that he had title to the malt. Defendant acquired a perfect title to the malt, and plaintiff authorized the transfer of such title and affirmed its validity. There were no equities of the defendant involved, and the only question was whether Pank acted for the Fort Dearborn National Bank or for the plaintiff. The right of the plaintiff to the proceeds was not lost, as between the parties or as against the defendant, by delivering the warehouse receipt to Pank in the character of agent for the plaintiff. *Cooper* v. *Ray*, 47 Ill. 53.

It is insisted, however, that when defendant agreed to buy the malt from Pank it agreed to make the payment therefor to the Fort Dearborn National Bank, and that this contract for the benefit of the bank, as a third party, was binding upon the defendant, and it was bound to pay said bank, regardless of the subsequent notice of the rights of the parties. The malt in fact belonged to the plaintiff, and even if Pank represented to the defendant that it was pledged to the Fort Dearborn National Bank, yet if, before payment, the defendant was notified of the truth, it would be a good defense to a suit by the Fort Dearborn National Bank. That bank could not have recovered from defendant upon a promise upon such a consideration. Defendant was neither a creditor of Pank nor an innocent purchaser for value without notice, and was not entitled to invoke any rule arising out of the fact that the warehouse receipt was surrendered to Pank.

Some other instructions are discussed in argument, but what we have said covers every question of law raised in the case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*