## Frank Kittler v. John Studabaker, et al.

### Gen. No. 10,957.

1. OWNERSHIP OF NOTES—*how question of, determined.* Where the owner of notes secured by a trust deed is through fraud induced to part with their possession, and the person so obtaining their possession pledges them as collateral with another, it is incumbent upon such pledgee to show that he took such notes in good faith, for value, before maturity, without notice, and in the usual course of business. If, however, such owner parted with the possession of such notes knowingly and voluntarily, he must stand the loss, and in such latter case the pledgee's possession of such negotiable notes, endorsed by their owner in blank, is *prima facie* evidence of title, and creates a presumption that they were in fact acquired in good faith, for value, before maturity, in the usual course of business, and without notice.

2. OWNERSHIP OF NOTES—*effect of, upon title to trust deed securing the same.* Where persons become the *bona fide* assignees and holders of notes, they also become the owners of the trust deeds securing them, subject only to the equities of the makers, but not subject to latent equities of a third party of which they had no notice.

3. INCOMPETENT EVIDENCE—*when admission of, will not reverse.* Where there is sufficient competent evidence to sustain the findings of a decree, the presumption will be indulged that incompetent evidence admitted over objection was rejected by the chancellor in his final determination of the issues.

4. SURPLUS—*when foreclosure decree will not provide for distribution of.* Where there are two foreclosure suits in which the parties and the legal issues are the same, which (though never consolidated) have by stipulation been heard and determined upon the same proof, and in which there is a controversy between several parties, one claiming the notes in suit as owner, and the other claiming the notes in suit as pledgees, the court will not, in rendering decrees in such suits, provide for a distribution of the surplus remaining after the satisfaction of the pledgees' demand, where it appears that no such surplus could exist unless the two cases were considered as one; nor is the person claiming as owner entitled to any such decree, even though such a surplus might arise in one suit, where he has not conceded that the persons claiming as pledgees have any interest in the notes in suit, and where he has not joined in his cross-bill the pledgor, who, in such case, would be an indispensable party.

Proceeding to foreclose. Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1902. Affirmed. Opinion filed March 18, 1904.

Kittler v. Studabaker.

Statement by the Court. This case turns on the owner-ship of the note for $8,000 and the trust deed securing the same hereinafter mentioned, appellant contending that they are his, and the appellees Studabaker and Dougherty, that they are theirs. Of the appellees, the two named are the only ones interested in the appeal and will be meant wher-ever the word " appellees " occurs herein.

Appellees, who are parties in the banking business as the Studabaker Bank in Blufton, Indiana, filed their bill to fore-close a trust deed made by one Edward R. Anderson to secure his note for $8,000, dated July 18, 1898, and payable five years thereafter with interest at seven per cent evi-denced by ten interest notes, alleging that appellees are the owners of said notes and trust deed and making appellant and others defendants to the bill. Appellant answered, ad-mitting appellees are in possession of the notes and trust deed, but denying that they are the owners thereof or that they became such before maturity; alleges that the loan to said Anderson was made by Adolph A. Kuhn, as a member of the firm of Kuhn Brothers, with the money of appellant; that said notes and trust deed were delivered to appellant and were afterwards stolen from him by said Adolph A. Kuhn and by him deposited with appellees; that said notes and deed always have been and now are the property of appellant.

Subsequently, appellant filed his cross-bill making the same averments as in his answer and adding that appellees claim and pretend that said notes and trust deed were trans-ferred to them by said Adolph A. Kuhn as security for cer-tain alleged advances to him and that by reason thereof they are the owners of said notes and deed. Appellees and others were made defendants to said cross-bill, but said Kuhn was not. The prayer is the usual one in a bill to foreclose. Afterwards the prayer was amended by adding that appellees be required to surrender said notes and deed to appellant. Appellees answered the cross-bill, denying that appellant was or is the owner of said notes and deed or that they had ever been delivered to him, or that they

had been stolen from him; admit they purchased the same from said Kuhn as security for advances made to him by them, and alleges that they received said notes in due course of business without notice and before maturity thereof.

The case being at issue, it was referred to a master who reported that on March 1, 1900, appellees loaned Adolph A. Kuhn $10,000 upon his note for that amount and of that date payable in sixty days, taking as collateral security for said loan said Anderson's note of $8,000 and said interest notes and trust deed, and also another note made by Anderson for $7,000, together with the interest notes and his trust deed to secure the payment of said $7,000 note and interest; that appellant's claim that Adolph A. Kuhn feloniously stole from him the $8,000 note, the interest notes and the trust deed securing the same, is not sustained by the evidence; that there is due appellees from said Kuhn upon his said note for $10,000 the sum of $11,409.72, and that there is due from Anderson upon said $8,000 note for principal and interest the sum of $9,235.77. To this report appellant filed objections alleging in substance that the master erred in not sustaining the cross-bill and in not recommending the relief therein asked.

The court entered a decree dismissing the cross-bill, finding there was due appellees from said Anderson $9,268.67 and solicitor's fees and master's costs and fees, and ordering that unless Anderson paid same within five days the premises be sold and appellees paid out of the proceeds and if there be a surplus, the master should bring it into court and abide the further order thereof. The appeal is from this decree.

WILLIAM H. DELLENBACK, for appellant.

CRATTY BROS., JARVIS & LATIMER, for appellees; W. H. DUVAL, of counsel.

MR. JUSTICE STEIN delivered the opinion of the court.

The evidence shows that on July 23, 1898, appellant bought from Kuhn Bros., who were conducting a real estate

Kittler v. Studabaker.

and loan business, two notes dated July 18, 1898, one for $8,000, being the one sought to be foreclosed herein, and another for $7,000, both signed by Edward R. Anderson. Each had five years to run, drew interest at seven per cent, evidenced by ten interest notes, and was secured by a trust deed on property located at Nos. 1499 and 1501 West Adams street, Chicago, Illinois. Appellant collected the interest on the notes for a year and a half. In the latter part of February, 1900, Adolph A. Kuhn, of said firm of Kuhn Bros., having in some way obtained from appellant the possession of said principal notes for $8,000 and $7,000, the unpaid interest notes and said two trust deeds, took them, together with his own note for $10,000, dated March 1, 1900, and due sixty days after date, to Arthur L. Kemper, a note broker in Chicago, for the purpose of obtaining a loan on the $10,000 note with the two other notes and the trust deeds as collateral. Kemper on behalf of Kuhn sold to or discounted the latter's note with appellees, secured by the collaterals; and on March 1, 1900, long before the $8,000 and $7,000 notes became due, appellees loaned and advanced to Kuhn through Kemper, $10,000 upon the $10,000 note and the Anderson collaterals. All the Anderson notes were payable to his own order and indorsed by him in blank.

If, as claimed by appellant, Kuhn got from him the Anderson notes and trust deeds by fraud, it devolved upon appellees to show that they took them in good faith, for value, before maturity, and in the usual course of business. Hide and Leather Bank v. Alexander, 184 Ill. 416; Merchants' Loan & Trust Co. v. Welter, 205 Ill. 647. If, on the other hand, appellant parted with the possession of the papers to Kuhn knowingly and voluntarily, and thereby enabled him to inflict a loss either upon appellant or appellees, appellant would have to bear it. Mann v. Merchants' Loan & Trust Co., 200 Ill. App. 224. And in such case appellees' possession of Anderson's negotiable notes indorsed by him in blank would be *prima facie* evidence of title, and they would be presumed to have acquired them in

good faith, for value, before maturity, in the usual course of business, and without notice. Mann v. Loan & Trust Co., *supra*, and authorities cited on page 236. If appellees were the *bona fide* assignees and holders of the notes, they would also become the owners of the trust deeds securing them, subject only to the equities of the makers, and not subject to latent equities of a third party (such as appellant) of which they had no notice. Mann v. Loan & Trust Co., *supra*, and cases cited on pp. 227 and 228.

The court and the master both found that appellant's charge that the notes and deeds had been stolen from him was not sustained. On the direct, appellant testified that in response to a request conveyed to him by Kuhn's book-keeper he took the papers from the vault where he had them for safekeeping, to Kuhn's office, some time in February, 1900. "He told me that Anderson could sell the property and they liked to use my papers. He told me Anderson was over in the court house with the other parties. I gave him my papers * * * and he went back in his office * * * and came out in ten or fifteen minutes and handed me two packages and told me if Anderson and the other parties didn't come I could wait. I took the packages, put them in my pocket and went to the vault and put them back. I next took the papers from the vault on the seventh day of March, 1900, and went with them to Kuhn's office. He told me he had three other fine mortgages, $5,000 apiece, near Garfield Park, and he would show me the property next Saturday, the tenth. I told him if I was satisfied with the property I would take the mortgages. He handed me three $5,000 notes, March 7th, and told me to come over on the tenth." He testifies further that he did not examine the contents of the two packages handed him by Kuhn in February; that he gave them to him on March 7th and never got them back; that the last time he saw the $8,000 and $7,000 notes was in February when he handed them to Kuhn; that "when I gave Mr. Kuhn my papers March 7th it was with the distinct understanding that he was to give them back

to me on the tenth;" that when he went over on the tenth he found Kuhn's office closed by the sheriff and has never seen him since, although he has made an effort to find him.

In view of the fact that during the interval between appellant's calling at Kuhn's office in February, 1900, and the 7th of March following, the Anderson notes and deeds were deposited with appellees as collateral for Kuhn's note of $10,000, it is apparent that if the story told by appellant on the direct be true and correct in all particulars Kuhn surreptitiously retained the papers handed him by appellant in February and gave him others in their stead which appellant kept until March 7, believing them to be the Anderson papers, and then handed them to Kuhn and received from him in return three $5,000 notes. But on being cross-examined appellant stated he had known Kuhn for twenty years, had been dealing with him for eight or nine years, was in his office every couple of weeks, had bought a good many mortgages from him, traded notes with him and had no lawyer in the transactions, Kuhn examining the papers and telling him they were all right and he taking his word for it; that he could only read some English and "depended all on Kuhn." He also testified that the interest on the Anderson notes had been reduced and the reduction indorsed on the notes and signed by Kuhn. No such indorsement is upon the $8,000 note produced by appellees and involved in this controversy.

On behalf of appellees, Josiah Cratty, an attorney, testified to having a conversation at his office with appellant on May 4, 1900, in the course of which he stated that he had given Kuhn the $8,000 and $7,000 notes about the first of March. Mr. Cratty then asked him: "Mr. Kuhn did not steal these notes from you?" Upon appellant's answering "No," Cratty asked him further: "You let him have the notes of your own free will?" To which he answered: "Yes, he coaxed me for about a week, then I let him have the notes." This answer he repeated several times and also told Cratty, as the latter testified, about the reduction of the interest and its indorsement on the notes.

Appellant took the stand in rebuttal and denied that he had told Mr. Cratty that the interest had been reduced, or there were indorsements on the notes. But when asked by his counsel whether anything had been said between Cratty and him "about these notes having been stolen from you," appellant answered "I could not remember any more." Appellant did not deny having told Cratty that Kuhn had coaxed him into giving him the notes nor did he deny that Kuhn in point of fact had so coaxed him. Considering the relations between the men, the absolute confidence appellant placed in Kuhn, it was not necessary for Kuhn in order to obtain possession of the papers to resort to the trick of deceiving him by a fraudulent substitution and to run the risk of detection if appellant had examined the contents of the substituted packages. How easy it was for Kuhn to get from him whatever he desired appears from the fact testified to by appellant as above set forth that on the 7th of March he willingly and without any demur or objection whatever delivered to him what (if his testimony be true) he believed to be the Anderson securities in exchange for the three $5,000 notes before he had even seen or examined the real estate upon which they were secured and upon the understanding that the Anderson papers were to be returned to him in case the real estate proved unsatisfactory. The usual course would have been for appellant to have kept his old securities until he was satisfied with the new.

Upon this state of the proof we are not prepared to say that the court and master erred in finding against the fraud alleged by appellant to have been practiced upon him by Kuhn. We are further of the opinion that appellees acquired the notes and trust deeds in good faith for value before maturity and in the usual course of business so that they would be entitled to hold them as against appellant even if he had been fraudulently deprived of them.

The undisputed evidence shows that after Kuhn came into the possession of the notes and deeds he placed them with Kemper, a note broker, to obtain for him a loan of

$10,000 upon his note for that amount, with the notes and deeds as collateral. At that time Kuhn was in good standing and reputation, and Kemper had known and done business with him for several years. Kemper submitted the $10,000 note, the proposed collateral, the guaranty policies of the Chicago Title and Trust Company insuring the title, the fire insurance policies and other papers to Josiah Cratty, a lawyer, for his opinion as to the correctness of the papers and the condition of the title to the real estate. The attorney had a pencil abstract made by the Title and Trust Company of the title to the real estate since the giving of the trust deeds by Anderson, examined all the papers, had Kuhn come before him and inquired of him in detail as to the ownership of the $8,000 and $7,000 notes and the deeds securing the same, and as to the payment of the interest coupons that had matured previously, and took from him his affidavit to the effect that he, Kuhn, was the sole and absolute owner of the collateral, that no other person had any right or title thereto, and that he had the absolute right to sell and dispose of the same. After the investigation the attorney sent his opinion addressed to "A. L. Kemper, Studabaker Bank, Bluffton, Indiana," stating that the papers were satisfactory, and the legal opinion in reference to the securities offered by him for sale. In numerous other transactions he had previously procured opinions of the same attorney in regard to collaterals. Kemper, who had been a broker in commercial paper since 1894, and had done business with appellees and their bank for several years, took Kuhn's note and the collateral to Bluffton, Indiana, where the bank was located, and submitted them, together with all the other papers, including the policies, Kuhn's affidavit and the opinion of the attorney, to appellee Hugh Dougherty. The result was that the bank discounted Kuhn's note, paying Kemper $10,000 therefor, less the stamp duty, and Kemper turned over the proceeds to Kuhn, less $500, his commission. Before concluding the transaction and in the course of the negotiations Dougherty asked Kemper about the value of the real

estate upon which the trust deeds were executed and Kem-
per assured him it was ample.   Dougherty testifies that
appellees had no notice of any one but Kuhn having any
interest in the notes and deeds.   This was but one of many
transactions had between Kemper and Kuhn and between
Kemper and appellees' bank, the latter on the same day
buying notes from Kemper aggregating $28,000.   We see
nothing unusual or suspicious about the transaction.   Banks
are in business for the very purpose of doing what was
done in this case, that is, discounting paper secured by good
collateral; and it is well known that country banks having
funds to dispose of invest them right along by discounting
notes brought or sent them from our large business cen-
ters.   There was every reason for appellees to repose con-
fidence in the representations of Mr. Kemper, a man in
apparent good standing, whom they had known and trans-
acted business with for years.

It appears that the witness Cratty was permitted by the
master to testify to conversations with two attorneys
who had successively acted for appellant and had told
Mr. Cratty that their client had admitted to them that he
had given Kuhn the securities in question voluntarily and
that there was an indorsement on the notes of a reduction
of interest.   This testimony is now claimed to have been
incompetent.   Assuming (what is to say the least doubtful)
that the record is in such shape as to permit the objection
to be presented, it is sufficient to say that in accordance
with the rule of equity practice it will be presumed that if
the objection was a good one the chancellor disregarded
the testimony, and that his decree will not be reversed if
there was sufficient other proof in the record to sustain his
findings.   Such, we think, is the case here.

Simultaneously with the bill at bar appellees brought an-
other one to foreclose Anderson's note and trust deed for
$7,000, and under a stipulation of counsel the same proof
was received in both cases.   They were, however, not con-
solidated.   Each suit remained distinct and separate from
the other and has its own decree.   The decree in the other

suit finds $11,409.72 to be due appellees from Kuhn, and $8,077.67 to be due them on the Anderson note for $7,000, and orders a sale of the real estate to make said sum of $8,077.67.   It is now complained as error that under the two decrees appellees will be paid $17,313.44, when in reality there is due them only $11,409.72 on Kuhn's note for $10,000, and that no provision is made for the disposition of the surplus that may possibly remain after payment of the $11,409.72, interest, fees and costs.

Counsel evidently treats the two suits as one, or as if only one bill had been filed to foreclose both Anderson notes. This is a misapprehension.   On the face of each record considered by itself there is and can be no surplus, the amount found due appellees on the Kuhn note being in each case considerably in excess of the amount found due on the note sought to be foreclosed.   It is only by combining the two records and treating them as one that a surplus may result.   That, this court has no right to do, in the absence of consent of parties.   If appellees receive out of both cases more than is due them, they will hold the surplus as trustees for the pledgor.   " The pledgee, having several securities for the same debt, may, provided he use good faith in so doing, resort to any one or all of them to satisfy his debt, holding the surplus, if any, for the benefit of third persons interested, and of the pledgor."   18 Am. & Eng. Enc. of Law, (1st ed.) 681;  Tooke v. Newman, 75 Ill. 215; Buchanan v. International Bank, 78 Ill. 500;  Malting Co. v. Bank, 185 Ill. 422, 428.

Upon this record appellant cannot raise the question of what shall be done with the surplus if there be any. Neither his cross-bill nor his answer is framed on the theory that he claims a surplus.   On the contrary he denies that appellees are the owners of the notes and trust deed which the bill is filed to foreclose, and asserts ownership in himself and prays that appellees may be decreed to surrender them to him.   He cannot be granted any relief in respect of a surplus without first conceding that appellees have some rights in the notes and deed; for it is not until

such rights have been satisfied that there can be a surplus. But by his pleadings he totally denies the existence of such rights and has not made Kuhn a party to his cross-bill, a thing he should have done if he desired the court to dispose of the surplus. In such case Kuhn was an indispensable party. It was from him appellees bought the notes and deed. They did not know appellant in the transaction and did not know of his existence until some time afterwards. Kuhn was the pledgor so far as appellees are concerned. It is an issue between him and appellant as to which of them is entitled to the surplus. The court cannot adjudicate this issue without both being before it.

The decree appealed from is affirmed.

*Affirmed.*