New York, Chicago and St. Louis Railroad Company, Appellant, v. Erie Railroad Company, and Chicago and Western Indiana Railroad Company, Appellees.

Gen. No. 45,524.

Opinion filed March 18, 1952. Rehearing denied April 6, 1952. Released for publication May 6, 1952.

WINSTON, STRAWN, SHAW & BLACK, of Chicago, for appellant; JOHN C. SLADE, DOUGLAS C. MOIR, and EDWARD J. WENDROW, all of Chicago, of counsel.

SHOREY & WOODS, of Chicago, for certain appellee, J. R. BARSE and SAMUEL KASSEL, both of Chicago, for certain other appellee; CLYDE E. SHOREY, and FREDERIC BARTH, both of Chicago, of counsel.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is an appeal by plaintiff, the New York, Chicago & St. Louis Railroad (appellant, hereinafter referred to as "Nickel Plate") from a judgment entered by the trial court which ordered: (1) That the plaintiff take nothing by its complaint as amended; (2) that defendant-counterclaimant, Erie Railroad Company (appellee, hereinafter referred to as "Erie") should recover from plaintiff $41,555.49 and costs; and (3) that defendant, Chicago & Western Indiana Railroad Company (appellee, hereinafter referred to as "Western Indiana") should recover its costs from Nickel Plate.

The action arose out of a grade-crossing collision which occurred on December 9, 1945, between an Erie train traveling on a Western Indiana track, and a passenger bus operated by the Schappi Bus Lines, Inc., at Burnham avenue in the village of Burnham, which resulted in death, personal injuries and property damage. The collision occurred because a gateman operating the crossing gates negligently raised them while a westbound Erie train was approaching, after an eastbound train of the Chesapeake & Ohio Railroad Company (hereinafter referred to as "Chesa-

358

peake"), traveling on a parallel track of the Nickel Plate, had passed over. Erie used Western Indiana's track under a lease from it while Chesapeake was a lessee of Nickel Plate.

The installation and maintenance of the crossing protection, and payment of the gateman's wages, were pursuant to an agreement entered into in 1934 (hereinafter referred to as the "agreement"), between Nickel Plate, Western Indiana, the Kensington and Eastern Railroad Company (hereinafter referred to as "Kensington"), and the Chicago South Shore & South Bend Railroad Company (hereinafter referred to as "South Shore"). Kensington owned tracks paralleling Western Indiana's and Nickel Plate's, and South Shore was its lessee. The railroads had agreed that Western Indiana should install and maintain the gates, tower and a stop sign with a prorata right of reimbursement from Nickel Plate and South Shore, while Nickel Plate should pay the gateman's wages with a prorata right of reimbursement from Western Indiana and South Shore. All three parties, together with Kensington, had the right to discharge the gateman.

Article 7 of the agreement provided how liability for accidents at the crossing should be borne as between the parties. The agreement was entered into pursuant to orders of the Illinois Commerce Commission, which had authorized the construction of the Burnham-avenue crossing, had ordered the installation and maintenance of gates, tower and a gateman and had ordered that the expenses of maintenance and operation should be divided among the four railroads named.

Erie settled all claims arising from the collision of its train and the bus for $75,698.79, and then demanded that Nickel Plate reimburse it for one-half of this amount, asserting that it was obligated so to do under the second paragraph of Article 7 of the agree-

ment. Nickel Plate declined and then instituted the present declaratory judgment action and sought recovery of $855.95 it paid for fees and expenses incurred in defending the causes of the actions growing out of the collision, to which Erie filed its answer and counterclaim, and Western Indiana filed its answer.

The case was tried by the trial court without a jury on the allegations and admissions in the pleadings, a stipulation of facts and certain written exhibits, and resulted in the judgment hereinbefore described. The judgment in favor of Erie on its counterclaim against Nickel Plate is one-half the sum that Erie paid in settlement of all claims, plus five per cent interest from time of demand.

Nickel Plate contends that under the terms of the agreement it is responsible to indemnify only the other parties to the agreement pursuant to its terms, and that no interpretation could be placed upon the agreement by which it would be responsible to Erie, a lessee of Western Indiana and not a party to the agreement.

Erie contends that Nickel Plate is obligated to indemnify Erie for one-half of the sums paid in settlement because: (1) Western Indiana executed the agreement for and on behalf of it as third-party beneficiary, and (2) Western Indiana was the agent for it as an undisclosed principal.

The decision of the respective contentions resolves itself in the interpretation of the first two paragraphs of Article 7 of the agreement, which read as follows:

"Seventh: Each of the parties hereto assumes all responsibility for, and agrees, at its own expense, to defend any action for damages, injury or death resulting either directly or indirectly out of the operation of its train, trains or other equipment or the train, trains or equipment of its lessees over said crossing, whether such damages, injury, or death shall be to the

persons or property of any of the parties hereto, to its or their employees, or to the persons or property of third persons; and each of the parties hereto does also assume all responsibility for, and agrees at its own expense to defend any action for damages, injury or death arising out of the operation of said gates or signs, or. either of them, or their failure to operate while the train, trains or other equipment of such party, or of its lessees, is moving over or approaching said crossing and while said watchman is in its employ as herein set forth, whether such damages, injury or death shall be to the persons or property of any of the parties hereto, to its or their employees, or to the persons or property of third persons; and each of the parties hereto does further agree to protect, indemnify and save harmless the others, from and against all such damages, injury or death and expenses incident thereto.

"If the trains or equipment of two or more of the parties hereto or of their lessees should at any time or times be using or approaching said crossing simultaneously, then and in that event, said watchman shall at such time or times be considered the joint employee of the parties whose trains or other equipment or whose lessees are so using or approaching said crossing, and if any loss, damages or injury shall arise out of the joint use of said crossing, then, except as hereinabove provided, the parties so jointly using said crossing shall bear the liability therefor equally and shall jointly indemnify and save harmless the other party from any expense incident thereto."

█ There is no dispute that it is the rule under Erie's first contention that if the agreement was entered into for the benefit of a third person not a party thereto, such third person may sue for the breach thereof. The argument turns rather on the application of

the rule to the construction of the agreement. *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 258.

In the preparation of the agreement the Nickel Plate, Western Indiana and Kensington, as owners, and South Shore, as lessee, were represented by able counsel. They knew the facts, the background and the reason for the agreement. They knew that Nickel Plate and Western Indiana leased its services to other railroads; that Western Indiana was owned and controlled by five of these lessees, one of which was Erie.

██ The language of the two paragraphs heretofore set forth is plain, simple and direct. In the first paragraph each contracting party agreed to bear ultimately the loss resulting from the operation of its trains, or trains of its lessees, over the crossing and agreed to save harmless the other parties from all such damages. They further agreed to bear ultimately the losses arising out of the operation of the gates or their failure to operate while its train, or trains of its lessees, was moving over or approaching while the gateman was in its employ (while operating the gates for its benefit) and agreed to save harmless the other parties from all such damage. The express words of indemnity at the end of it apply only to the parties. We can find in this paragraph no implication that the parties intended or did assume any responsibility for losses which a nonparty railroad might suffer.

██ ██ The second paragraph provides for nothing more than a division of loss or damages as between the parties in the event of loss or damage arising out of joint use of the crossing at the time of an accident. When the parties agreed to bear liability they agreed to bear it solely with each other and not with another party's lessee. It means that if one of two party joint users pays more than half the loss, the other is obligated to save him harmless to the extent he had paid for more than half. As in the case of a promise to "assume responsibility," a promise to "bear lia-

bility'' for loss equally with another implies a promise to indemnify the party who has paid more than a pro-rata share. It imposes an implied reciprocal obligation to indemnify. There is no promise in this clause by a party to indemnify any nonparty. The parties did not agree to divide the loss with nonparties but solely between themselves. Those who are to bear liability for loss equally are the same parties who are obligated to indemnify and save harmless the nonusing party. From the very nature of the agreement, the bearers of the losses equally must be limited to the parties, since the parties could not impose on nonparties an obligation to jointly indemnify the nonusing party at the time.

■■ As to Erie's second contention, the burden of proof to show that Western Indiana executed the agreement as agent for Erie, and its other lessees, was upon Erie. *Rice & Bullen Malting Co. v. International Bank,* 185 Ill. 422. The parties to the agreement operated under it for 15 years. At no time prior to the trial of this action did Erie, or any of the other lessees, assert or claim any rights under it as undisclosed principal. The correspondence between the parties after the collision in question and the pleadings themselves indicates that Erie made no such claim. Not until the trial was this theory revealed. We have examined the record and there is no showing that Erie, or any of the other lessees or owners of Western Indiana, conferred upon it authority to execute the agreement as its agent. Nor did they during the 15-year period assert or claim any right to perform the obligations of Western Indiana under the contract.

There was no mutuality of undertaking so that the obligation of Western Indiana to Nickel Plate could be enforced by Nickel Plate against Erie or any of the other lessees of Western Indiana. It is significant that the agreement was executed by South Shore, as lessee of Kensington, but yet it is silent as to its execu-

363

tion by Western Indiana as the agent of or for the benefit of any third party.

██ We are of the opinion that if counsel for Western Indiana believed that the agreement was to be for the benefit, protection and on behalf of Western Indiana's lessees or owners, either as third-party beneficiaries or as undisclosed principals, provision for it would have been spelled out with the same degree of particularity as are the rights and interests of the parties who executed the agreement. We, therefore, conclude that the two paragraphs of Article 7, which are the basis of the controversy, are nothing more than they plainly appear to be on their face: *an agreement of indemnity between the parties who executed the contract.*

We examined the cases cited by Erie. In each instance the terms of the contract or the circumstances surrounding its execution were different than in the instant case. We had here the interpretation of a contract that is different from any that has been before the courts. Because of the difference, Erie's cases were not persuasive and we of necessity have had to apply our own reasoning without benefit from its cases.

██ Western Indiana and Nickel Plate stipulated that the sum of $855.95 was expended by Nickel Plate for fees and expenses incurred in defending the action for damages brought as a result of the collision between the Erie train and the bus. The court has decided that Erie's and Western Indiana's contentions as to paragraph two of Article 7 are now applicable. Paragraph one of Article 7 provides that Western Indiana is to indemnify Nickel Plate. Under both clauses of Article 7 Western Indiana agreed to defend any action for damages resulting from the operation of its train, or the trains of its lessees, and out of the operation of the gates or their failure to operate while its train, or a train of its lessees, was moving over or approaching the crossing.

364

The stipulated facts show that the bus was struck by an Erie train and the collision arose out of the failure to operate the gates while this train was approaching. Nickel Plate is, therefore, entitled to collect from Western Indiana the sum it expended in defending the actions for damage growing out of the collision.

The judgment of the trial court heretofore entered is reversed and set aside and a judgment entered in favor of the New York, Chicago & St. Louis Railroad Company, a corporation, and against the Chicago & Western Indiana Railroad Company, a corporation, for the sum of $855.95 and costs of suit.

*Judgment reversed and judgment entered here for $855.95 and costs.*

TUOHY, P. J., concurs.

SCHWARTZ, J., took no part.